Hugh S. Coyle, J.
In this action to restrain unfair competition, the plaintiff seeks a temporary injunction enjoining the *12 defendants from using plaintiff’s designs, drawings, customers’ lists and from utilizing confidential trade secrets wrongfully obtained from plaintiff by the defendants. It is also sought to enjoin the defendants from manufacturing, producing, selling or dealing in or with products made by the plaintiff, similar thereto, or in competition therewith, and granting other relief.
The individual defendants are shown to be four former employees of the plaintiff corporation. The defendant, Tefco Corporation (sued herein as Tefco Electronics, Inc.), was organized on February 28,1961. It appears that the individual defendants, while still in the employ of the plaintiff, engaged in a series of acts designed to procure for the defendant corporation the trade secrets of the plaintiff corporation. The plaintiff is engaged in the business of manufacturing and selling a variety of electronic components and subassemblies. Principally, the plaintiff manufactures Teflon terminals and various connectors, magnetostrictive delay lines, program boards, and computer memory frames. It is plaintiff’s contention that such products are manufactured according to confidential designs, drawings, procedures and processes which constitute trade secrets.
As appears from the affidavit of Larry Willis, vice-president in charge of production on behalf of the plaintiff, he was present on June 14, 1961 with George E. Mohr, plaintiff’s vice-president in charge of sales, at a raid conducted by the police and detective force of Port Chester, New York, and representatives of the office of the District Attorney of Westchester County, at the premises of the defendant corporation. At such time, there was discovered in the defendants’ possession a series of cards which contained the plaintiff’s customers’ names and confidential price information, as well as secret trade information concerning the purchasing requirements of such customers. The defendant Bonazzo admitted in his answering affidavit the compilation of such a list while in the plaintiff’s employ, which compilation was made without direction of the plaintiff. There was also discovered in the possession of the defendants at their plant secret information of the plaintiff relating to its plating procedures and processes which had been developed by plaintiff’s metallurgist over a considerable period of time. Moreover, the defendants were found to have in their possession the plaintiff’s suppliers manual which set forth the part numbers which the plaintiff purchased from its suppliers. Thus, the defendant was placed in a position to engage in unfair competition by ordering from plaintiff’s suppliers precisely the material which the plaintiff had described in confidence to such suppliers. *13 It was further shown that the defendant Bonazzo had obtained from the plaintiff’s plant while in its employ and had removed therefrom a special slotting machine tool designed by the plaintiff for special application to its products. A quantity of samples of the plaintiff’s products was also found upon the defendants’ premises and the defendant Insky admitted in his answering affidavit that he had obtained such samples from Sealectro Corporation.
The defendant Insky, who had been in the employ of the plaintiff for five years as a production engineer, became president of the defendant Tefco Corporation; the defendant Malkiewicz, who had been in the employ of the plaintiff for one year as a sales expediter, became vice-president of the defendant Tefco Corporation; the defendant Bonazzo, who had been in the employ of the plaintiff for four years doing production control work and in its buying department, became treasurer of the defendant Tefco Corporation; the defendant Zucovieh, who had been in the employ of the plaintiff for four years as a draftsman, became secretary of the defendant corporation.
From the affidavits submitted herein, it is clear that the defendants intended to and did appropriate to themselves the trade secrets of the plaintiff with the purpose of manufacturing Teflon terminals in direct competition with the plaintiff, their former employer. In so doing, they did not attempt to develop for themselves the knowledge and skill requisite to the manufacture of these highly complex electronic devices. On the contrary, by a concerted effort, they abstracted from the plaintiff’s plant all of the significant purchase, production and sales information essential to the conduct of a business identical to that of the plaintiff. Having set themselves in direct competition with the plaintiff, there is proof that the defendants sought to induce certain of plaintiff’s employees to commit acts of faithlessness to the plaintiff, such as, plating parts of defendants in the plaintiff’s plant with the plaintiff’s equipment and supplies.
In view of the proofs adduced by the plaintiff and the absence of any convincing countervailing proof on the part of the defendants, the plaintiff’s motion is granted. The controlling principles of law in such cases are well settled in this jurisdiction and are set forth in Minnesota Min. & Mfg. Co. v. Technical Tape Corp. (23 Misc 2d 671). The plaintiff has established that its processes of manufacture are trade secrets in contemplation of law and that the same were misappropriated by the defendants. The defendants ’ contention that the art of manufacturing Teflon terminals, and particularly, the tolerances and the plating *14 procedures, could have been originated by them after experimentation, is not tenable. The rule has been reiterated many times that a defendant accused of wrongdoing in an unfair competition action such as this, may not excuse his conduct by the assertion that the alleged trade secret could have been discovered by him by diligent research or by resorting to sources which said defendant never explored. (Minnesota Min. & Mfg. Co. v. Technical Tape Corp., supra.) “ The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means ”. (1 Nims, Unfair Competition and Trade-Marks [4th ed.], § 148; Smith v. Dravo Corp., 203 F. 2d 369, 375.)
Defendants contend that .since as employees of the plaintiff they did not sign restrictive agreements, they are not restricted from utilizing the plaintiff’s trade secrets after leaving plaintiff’s employ. A similar contention was made and rejected in Byrne v. Barrett (268 N. Y. 199, 206), where the Court of Appeals said: ‘ ‘ the duty of any agent or employee not to use confidential knowledge acquired in his employment in competition with his principal is implicit in the relation. (Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1, 6; Little v. Gallus, 4 App. Div. 569.) It exists as well after the. employment is terminated as during its continuance. It is an absolute and not a relative duty. ”
Plaintiff’s motion for a temporary injunction is granted, and the defendants, their servants, agents, employees and representatives, and all persons acting in privity or in concert with them, are enjoined and restrained from using or utilizing plaintiff’s designs, drawings, manufacturing production procedures and processes, manufacturing methods, prices, sources of supplies, experimental and developmental work, plaintiff’s customers’ names, addresses and requirements, models, tools, instruments, machines and parts or the defendants’ knowledge or information relating to the same. The defendants, their servants, agents, employees and representatives, and any persons acting in privity or concert with them are restrained and enjoined, pendente lite, from disclosing, furnishing or turning over any of the foregoing or copies thereof, or their knowledge or information with respect thereto, to any person, firm or corporation, and they are enjoined and restrained, pendente lite, from manufacturing, producing, selling, or in any way dealing in or with Teflon terminals, subminiature radio frequency connectors, magnetostrirU™ /Ielay lines, program boards, computer *15 memory frames and the other products manufactured and sold by the plaintiff, as well as any products which are component parts of said end products or are substantially similiar thereto or in competition therewith. The defendants are restrained and enjoined from manufacturing, pendente lite, inserts (threaded and unthreaded), washers (plastic and metal), ferrous and nonferrous pins, adapters, plungers, electrical contacts, inserts and other electronic components which compete with the products manufactured by the plaintiff and which are manufactured by the defendants through the special knowledge and information gained by the individual defendants during the course of their employment with the plaintiff.
The defendants and their associates are further enjoined and restrained, pendente lite, from soliciting plaintiff’s customers and from inducing or endeavoring to induce from plaintiff’s employ, any employees of the plaintiff and are forbidden to contact or communicate with said employees of the plaintiff for the purpose of acquiring plans, designs, products, tools, models, instruments, price lists, and any other confidential or secret information connected with the plaintiff’s business.
So much of the motion as seeks the appointment of a receiver is denied without prejudice to a renewal of said application upon a showing of any failure on the part of the defendants to comply with the order to be entered herein.