Frederic E. TINSLEY and Anstalt Dynos, Plaintiffs,

v.

MAVALA, INC. and C. Benjamin Dinerstein, individually and doing business under the name and style of C-B Sales Co., Defendants.

United States District Court
S. D. New York.
Jan. 30, 1964.

Golenbock & Barell, New York City, for plaintiffs; Leonard Wagman, Henry C. Shays, New York City, of counsel.

Pross, Smith, Halpern & Lefevre, New York City, for defendants; Mitchell M. Bailey, New York City, of counsel.

WEINFELD, District Judge.

 The excessively voluminous affidavits—a compound of self-laudatory statements, recriminations and many irrelevancies—have served to obscure rather than to clarify the issues presented by this motion for multiple relief. Even so, out of the welter of conflict and charge and countercharge, certain facts do emerge. One is that Mavala, Inc., the defendant on whose behalf some measure of relief is derivatively sought, was formed for the purpose of exploiting and distributing in the United States certain Mavala products manufactured abroad by Anstalt Dynos, the co-plaintiff herein. And it is also clear that equal ownership of the defendant corporation was shared by Tinsley, the individual plaintiff [1] and affiliated interests, and Dinerstein, the individual defendant; that Dinerstein was to serve and did serve as the chief executive officer in charge of its affairs in this country. Nor can there be any serious doubt that Dinerstein, as chief executive officer, received from the plaintiffs knowledge of the formula for Mavala Scientifique, a formaldehyde fingernail hardener, in connection with efforts to secure approval from the Food and Drug Administration for its sale in this country; that such approval also required development of a protector of some kind to safeguard the surrounding tissues of the skin; that a protector or foil shield was developed by Dinerstein in conjunction with Foster D. Snell, Inc., retained by the corporate defendant to secure approval from the FDA for the sale of Mavala Scientifique, and that Scientifique was one of the products to be exploited and distributed in the United States by the defendant corporation under the agreement of the parties.

1. Unless otherwise indicated, references to "plaintiff" are to Tinsley, the individual plaintiff.

Despite the assertion by Dinerstein that the protective shield is his exclusive property, the documentary proof, much of it under his own signature, as well as that of his counsel, gives support to the plaintiff's contention that it was developed for and on behalf of Mavala, Inc. in the effort to secure FDA approval and that Dinerstein's activities in connection therewith were in his capacity as the chief executive officer of the defendant.[2] While Dinerstein also asserts that the formulation of the hardener itself (used by Bendyne, Ltd. referred to hereafter) is entirely his, and is totally unrelated to the confidential information he received from the plaintiff, this position, too, is seriously undermined by his contradictory sworn statements.

The application by the individual defendant for a patent on the foil shield and his purpose to secure patent protection in other countries where plaintiff has been distributing Mavala Scientifique, as set forth in the counterclaim, and his use and exploitation of the shield on a nail hardener by Bendyne, Ltd., a corporation organized by him after this suit was commenced, under a name other than that under which plaintiffs' products are widely known and distributed, warrant protecting the interests of the plaintiffs pending the outcome of this litigation.[3]

In sum, the plaintiffs have shown enough to indicate that Dinerstein was in a fiduciary position to them and to the defendant corporation; that their claim of breach of fiduciary relationship by Dinerstein and his distribution of the nail protector by Bendyne, Ltd. invades their property rights. The claims are substantial and sufficient to entitle them to some measure of relief pending a final determination of the issues upon a trial, when the conflicting contentions of the parties may be fully and fairly appraised by the trier of the fact.[4]

Accordingly, the various branches of the plaintiffs' motion are disposed of as follows:

1. (a) The defendant Dinerstein is enjoined during the pendency of this action from transferring any claimed right in and to the patent and the pending patent application for the nail protector shield to any person, firm, or corporation, and from permitting Bendyne, Ltd., which he controls, to effect any transfer of rights in and to the foil shield.

(b) He is directed to require Bendyne, Ltd. to keep accurate accounts and records of all sales of "Living Nail" which uses the shield protector, and all income derived from such sales. These records shall be kept in sufficient form to permit a ready accounting of all such transactions.

(c) He is restrained from revealing to any person, firm or corporation the formula, or its component parts, obtained from plaintiffs for Mavala Scientifique, and any trade secrets or sales information derived by reason of his relationship to the defendant Mavala, Inc.[5]

The foregoing is without prejudice to a further application for injunctive relief upon completion of the defendant's deposition.

2. (a) The motion to strike the answer and counterclaims for willful failure of the defendant Dinerstein to appear for the taking of his deposition is denied upon condition, however, that he appear for such purpose at room 506 of this courthouse on February 13, 1964, at 10 A.M., and thereafter from day to day until his examination is completed.

The defendants are directed to produce upon the deposition for inspection and copying all relevant documents, books, correspondence and records relevant to the subject matter of this action.

Upon completion of the individual defendant's deposition, and upon its filing

---

2. Plaintiffs' Exhibits 15, 24, 26, 27.

3. There is no significant difference between the protector prepared for Mavala Scientifique, and that used by Bendyne, Ltd. for "Living Nail," its fingernail hardener.

4. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

5. Defendants do not challenge the need for such a provision to preserve the status quo. Brief for Defendants, p. 6.

in accordance with Rule 30(f) of the Federal Rules of Civil Procedure, the defendant may then serve a notice setting a day for the taking of plaintiff's deposition at this Court returnable not less than ten (10) days thereafter, and the plaintiff's examination shall continue from day to day thereafter until completed.

(b) Since plaintiff previously appeared for the taking of his deposition, which was aborted by reason of Dinerstein's nonappearance, he, the individual defendant, shall pay to the plaintiff his reasonable expenses for travel to this country and also a per diem sum for each day of travel and attendance upon the taking of his deposition, the amounts to be fixed in the order to be entered herein. Travel expenses shall be paid not less than five (5) days before plaintiff's required appearance, and the daily expenses within five (5) days after the completion of his examination.

In the event of the failure of defendant Dinerstein to appear at the time and place designated herein (unless the parties stipulate otherwise), the motion to strike the answer and counterclaims of the defendants is granted.

3. The motion for summary judgment in favor of plaintiff Anstalt Dynos upon the first count is denied. While it appears that the merchandise was shipped at invoice prices and in several instances was paid for as billed, a sufficient issue has been raised as to the precise terms of payment. However one may question the present claim by the defendants that the merchandise was to be paid for at manufacturer's prices rather than at invoice prices, the exchange of correspondence between the attorneys suggests that some arrangements were left open and required clarification.[6] While these references point to matters other than prices, Dinerstein swears they also encompass that item, and on this motion the Court's function is not to pass upon the credibility of witnesses, but only to decide whether a genuine issue of

material fact exists. The position of the plaintiff Anstalt Dynos is not so clear and compelling as to deny the defendants the right to contest the issue upon a trial.[7]

4. The motion for leave to serve an amended and supplemental complaint to add as a defendant Bendyne, Ltd., a Delaware corporation, is granted.

Settle order upon two days' notice. The proposed order shall also contain an appropriate clause for the furnishing of a bond in an amount to be fixed by the Court. Each side may submit a memorandum suggesting the amount thereof.

---

6. Defendants' Exhibits L and M.

7. Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945).