**CAPITAL CITY GAS COMPANY,**
Appellee,

v.

**PHILLIPS PETROLEUM COMPANY,**
Appellant.

No. 236, Docket 30818.

United States Court of Appeals
Second Circuit.

Argued Dec. 16, 1966.
Decided Feb. 14, 1967.

Wick, Dinse & Allen, Burlington, Vt., for appellee.

F. Elliott Barber, Jr., Brattleboro, Vt., William J. Zeman, Lloyd G. Minter, Chas. H. Purdy, Bartlesville, Okl., for appellant.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

Phillips Petroleum Company (Phillips) appeals from an order of the United States District Court for the District of Vermont requiring it to continue to supply Capital City Gas Company (Capital City) with liquefied petroleum gas (propane) until May 31, 1967.

Phillips is a Delaware corporation. Capital City is a Vermont corporation with its principal place of business at Montpelier, Vermont. Federal jurisdiction is based upon diversity of citizenship. On June 22, 1964, the two companies, continuing a long-time business relationship, entered into a contract for the sale of liquefied petroleum gas by Phillips to Capital City to cover the period from June 1, 1964 to May 31, 1967. The contract contemplated the purchase by Capital City of propane gas between certain specified maximum and minimum quantities per month at a price to be determined by the prevailing market price. Later the contract was modified by a written agreement so as to provide that the price would be eight cents per gallon throughout the life of the contract.

The contract contained the following provision:

14. *Force Majeure*

No failure or omission by Seller in the performance of any obligation of this contract shall be deemed a breach of this contract nor create any liability for damages if the same shall arise from any cause or causes beyond Seller's control, including but not re-

stricted to: acts of God, war, accident, fire, storm, flood, earthquake, or explosion, acts of or compliance with requests of federal, state, or local government, or any agency thereof, strike, lockout, disputes with workmen, labor shortages, transportation embargoes or failures or delays in transportation, unavailability of suitable tank cars or transport trucks or parts therefor, or *exhaustion, reduction, or unavailability of liquefied petroleum gas at the source of supply from which deliveries are normally made hereunder,* \* \* \*. (Emphasis supplied.)

The contract remained in force and apparently there was no friction between the parties until June 24, 1966, when Phillips addressed a certified mail letter, received June 27, informing Capital City that as of July 1, 1966 it was terminating its propane sales to Capital City and that as of that day it was invoking the Force Majeure provision recited above. Phillips based this action upon its statement that liquefied petroleum gas (propane) was not available to it after June 30, 1966 "at Delaware City, the source of supply from which our deliveries are normally made to you." In a July 1, 1966 letter Phillips also based its termination upon Capital City's failure to purchase the minimum contract requirements of propane during the months of May and June 1966. The source of supply at Delaware City, Delaware was Tidewater Oil Company's Flying A Refinery, also known as Reybold.

On July 6, 1966 Capital City filed this action in the court below seeking injunctive relief to prevent Phillips from terminating the contract. On July 6, 1966, the court issued, without notice to Phillips, an ex parte temporary restraining order, effective until July 15, to prevent Phillips from withholding delivery of three railroad tank cars of propane gas already ordered by Capital City for delivery on July 20, 1966. On July 14 and 15, 1966 the court held a hearing, upon notice, for the purpose of determining whether to continue the temporary restraining order or to grant a preliminary injunction.[1] On July 14 Phillips filed its answer to the complaint. When the case was called neither party was aware that anything other than the

---

1. The restraining order issued July 6, 1966 gave notice to defendant as follows:

Now THEREFORE, on motion of the Plaintiff it is ordered that the Defendant, Phillips Petroleum Company, its agents, successors, servants and employees, and all persons acting by, through or under their order, be and they are hereby restrained until the 15 day of July, 1966 from invoking the *force majeure* clause so as to halt the delivery of three railroad tank cars of propane gas which is ordered for July 20, 1966.

This temporary restraint is on condition that a bond be filed by Plaintiff herein in the sum of $5000.00 dollars.

It is further Ordered that hearing on continuation of this Temporary Restraining Order or granting of a Temporary Injunction be held at the United States Courtroom, Federal Building, Brattleboro, Vermont on July 14, 1966 at 4:00 P.M., E.D.S.T.

When the July 14 hearing was called the following took place:

The Court: You may proceed, Mr. Dinse.

Mr. Dinse: May it Please the Court, as I understand it, under Rule 65, the purpose of this hearing is either for continuance of the temporary restraining order, or for a hearing on the preliminary injunction?

The Court: Right.

Mr. Dinse: We are prepared to do either. I think the first is largely a matter of pleadings that have already been submitted, whereas, if we are talking about a preliminary injunction it is a question of evidence being presented to the Court.

The Court: What do you say, Mr. Barber?

Mr. Barber: Well, we feel, Your Honor, that the temporary order ran out under the Rule 65-B by its own terms and that at this time, there is nothing before the Court, excepting a Petition for a Temporary Order and that they have.

The Court: That is, I think that may be so, unless the parties agree to an extension of time of restraining order, otherwise we will proceed to consider the question of a temporary injunction.

proceeding noticed in the order was to be held, and that a full determination on the merits would be forthcoming in normal course on complaint and answer at a later date. Nevertheless, the court proceeded to take testimony and then issued a judgment order that Phillips continue to supply Capital City with propane for the entire remaining period of the contract at the price of eight cents per gallon.

■ This order is not designated as either a temporary or permanent injunction order, but is only designated "Judgment Order." Whatever it might have been labeled, it *is* a permanent injunction because it grants Capital City all the relief it might ultimately be entitled to and makes no provision for further hearings.

■ Of course the judgment order cannot be permitted to remain in force as a permanent injunction; Phillips has a clear right to have a full hearing on the merits of the complaint, for the order was granted upon a hearing noticed for a temporary injunction only, and no warning was given to the parties that a permanent disposition of the case was likely. Defendant's answer controverting allegations in the complaint and setting up, additionally, three affirmative defenses, was filed that very day. It is true that permanent relief might be granted after a hearing upon a temporary injunction if no genuine issues of fact are found to be present. Standard Oil Co. of Texas v. Lopeno Gas Co., 240 F.2d 504 (5 Cir. 1957); or if the court had ordered a consolidation of the hearing for temporary relief with the trial on the merits. Fed.R. Civ.P. 65(a)(2), effective July 1, 1966. In this case, however, it is clear to us that there are important genuine factual issues involving a determination of where Phillips's "normal" source of supply was for the propane gas shipped to Capital City and whether there had been a waiver by Phillips of the minimum quantity of propane Capital City was required to purchase of Phillips under the contract. The noticed hearing upon temporary relief was never consolidated with a trial on the merits for permanent relief although the court considered evidence put in by both parties. As pointed out above, the parties were not made aware that final relief was to be granted. Because of the different scope of possible relief, the difference in types of evidence admissible, and the difference in burden of proof required, compare Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2 Cir. 1953) with Allen v. Pyrene Mfg. Co., 111 F.Supp. 819 (D.N.J.1953), between permanent and temporary injunctive relief, a party is entitled to notice that permanent rather than temporary relief is being determined. Since Phillips was not given such notice in this case, the permanent injunction must be vacated.

■ We must next consider whether the district court's order should remain in force as a temporary injunction until the full evidentiary hearing on the merits of the action on remand. The most significant condition which must be present to support the granting of a temporary injunction is a showing that if the relief is not granted irreparable injury during the pendency of the trial will result. Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214 (2 Cir. 1953); Meiselman v. Paramount Film Distributing Corp., 180 F.2d 94 (4 Cir. 1950). The evidence in this case does not demonstrate that there is a threat of irreparable injury during the pendency of the action. From the evidence thus far before the court it seems clear that Capital City is able to buy propane gas on a current basis from other sellers of the product. Any injury suffered from having to make such purchases at current prices and costs is compensable by money damages if, on the merits of its complaint, Capital City is ultimately successful.

■ When we turn to the merits of the controversy we see that Phillips presented two reasons for terminating its contract with Capital City; the failure of Capital City to purchase the minimum amounts required by the contract, and the failure of its "normal" source of supply for propane gas. As to the first of these, the district court, upon its con-

sideration of the limited evidence produced at the hearing, found that the *minimum* quantity requirements of the contract were waived by the action of Phillips and therefore the requirements were no longer enforceable. There was evidence of an oral agreement between the parties that the minimum requirement would not be enforced and evidence that Phillips made no attempt to enforce this provision until it wished, for another reason, to cancel the contract. Under these circumstances, we cannot say that the finding of the district court that the requirement was waived was clearly erroneous, Fed.R. Civ.P. 52(a), but the parties should have a full opportunity to explore this issue further if evidence not yet in the case is available.

 The attempt to cancel the contract by invoking the provision entitled "Force Majeure" presents more difficulty. The district court concluded that this provision was not available to Phillips because no normal supply point had been designated under the contract, Phillips had supplied Capital City from a number of different sources, and the failure of supply was not a "force majeure." We think the failure to designate a normal source of supply in the contract was not fatal to the effectiveness of the provision. The clause "source of supply from which deliveries are normally made *hereunder*" (emphasis added) would indicate that the normal source of supply was to be determined by experience under the contract. Nor would the fact that Capital City was supplied from more than one source render the provision inoperative if it could be demonstrated upon a full evidentiary hearing that the source lost was the normal supply point. That a source is the normal one does not mean that it is the exclusive source but only that it is the usual, customary, or habitual[2] one on a long-run basis. If Phillips's evidence, including the evidence already presented at the prior hearing, Fed.R. Civ.P. 65(a)(2) establishes this,

then the provision becomes operative and invokable. Nor is there any merit to the position that the source of supply must be lost in a manner which would be considered a true "force majeure" such as an act of God, see Pacific Vegetable Oil Corp. v. C. S. T. Ltd., 29 Cal.2d 228, 174 P.2d 441 (1946), merely because the contract provision was entitled "Force Majeure." The operative language of the provision clearly contemplates just such an occurrence as the one before us. While it might have been improvident for Capital City to have agreed to such a condition in the contract, it should not be the function of a court, where there is no ambiguous language and the meaning of the contract term is provable by evidence of an historical course of action by the parties, to reform the agreement.

 Although the court below found that plaintiff is a public service corporation and believed that because of that circumstance plaintiff would be more subject to a multiplicity of suits than another corporation might be, it appears to us that whether plaintiff is a public service corporation is quite immaterial when the question for judicial determination is the meaning and effect of a term used in a contract the corporation freely entered into.

 An examination of the situation prompts us to believe it best to remand the case to the court below for a hearing upon the merits of all issues in the case that are well-pleaded. Of course the evidence already taken at the July 14–15 hearing need not be repeated, Fed.R. Civ.P. 65(a)(2). We have carefully considered the position the parties will be in upon the receipt by the district court of our mandate, and we are of the belief that it is also best to adjudge that the present judgment order below be vacated in its entirety and the injunction contained therein dissolved.

Any assessment for costs or damages suffered by appellant because of the

---

2. See definition of "normal" in Restatement (Second), Torts § 302, comment e (1965); In re New Jersey Power & Light Co., 9 N.J. 498, 89 A.2d 26, 41 (1952).

injunction should await final disposition and judgment of the case on its merits. We urge that the district judge adopt a suggestion by appellee that the case be set for a final hearing at an early date.

The judgment order below is vacated and the cause remanded for proceedings not inconsistent with the within opinion.