**ARNOLD'S ICE CREAM CO., Inc., Plaintiff,**

v.

**Wilbur CARLSON et al., Defendants.**

**No. 71–C–464.**

United States District Court, E. D. New York.

May 13, 1971.

Handler Kleiman & Sukenik, by Steven H. Thal, New York City, for plaintiff.

Melton, Hand, Long & Burgess, by Martin Burgess, Jr., Bay Shore, N. Y., for defendants.

JUDD, District Judge.

## MEMORANDUM

Plaintiff has moved for a preliminary injunction restraining sales by the defendants to plaintiff's former customers.

Plaintiff is a wholesale dealer in ice cream, incorporated in New Jersey. Its yearly sales volume is approximately $2.5 million, of which some 40% is sold in New York. The New York office is responsible for processing less than half of the New York sales, the rest being handled from New Jersey facilities. Plaintiff's executive and administrative activities are centered in New Jersey. Under these circumstances, the court finds that plaintiff's principal place of business is in New Jersey. Egan v. American Airlines, Inc., 324 F.2d 565 (2d Cir. 1963); Barrios v. Dade County, 310 F.Supp. 744 (S.D.N.Y.1970). The individual defendants are citizens of New York and the corporate defendants are incorporated in New York with their principal place of business in Suffolk County, New York. Since the amount in controversy exceeds $10,000, jurisdiction is proper under 28 U.S.C. § 1332.

### The Facts

In the fall of 1969, Borden's Milk Co. closed down its ice cream facilities in the Nassau-Suffolk market and plaintiff established an outlet there employing four drivers and three salesmen to promote its product. Prior to that time, Borden's was servicing more than 1,500 customers. Plaintiff's efforts to cultivate part of this market were apparently successful, since in its 1970 fiscal year .it had sales of approximately $300,000 and delivered its product to about 190 customers, most of whom were formerly served by Borden's.

The defendants Mesloh and Carlson were formerly employed by Borden's as

truck drivers delivering ice cream in the Nassau-Suffolk County area. When Borden's ceased doing business in this market on October 3, 1969, the defendants were hired by plaintiff; defendant Stevens was an alternate driver for plaintiff. Their duties for plaintiff included delivering orders previously 'phoned in and making route sales as the individual customers required. In order to carry out their employment, defendants were supplied with pricing and product information as well as customer names.

On March 31, 1971, at the end of the day, the individual defendants submitted their resignations to plaintiff, effective immediately. Prior to that time, in February 1971, the East End Ice Cream Co. and the West End Ice Cream Co. were incorporated by the wives of two of the defendants. During early March 1971, the defendant corporations acquired trucks which were subsequently used to deliver ice cream products. Affidavits from customers and employees of plaintiff indicate that before March 31, 1971 the individual defendants approached plaintiff's customers and solicited sales on behalf of the corporate defendants. The individual defendants also attempted to convince some of plaintiff's other employees to join them in a proposed competing business prior to submitting their resignations. During the last 10 days of March 1971, the combined sales of Mesloh and Carlson dropped 25% to 30% from sales in the beginning of March, thus creating an unfilled need for April orders. The defendants had also used up all their vacation time in the three months preceding their resignation.

Since defendants began their separate business, in less than one month about 45 customers ceased to buy from plaintiff, and 85 others have either been solicited by the defendants or sold some of their products. A number of these are customers with substantial volume. The total sales in jeopardy as a result of defendants' activity amount to approximately $100,000 per year.

The defendants did not testify at the hearing. While most of the accounts solicited were former Borden's customers, it does not appear how many of the defendants' customers were known to the individual defendants through their work at Borden's. The customers served by plaintiff are only a fraction of the total number of ice cream retailers in the area.

### Discussion of Law

Customer lists are entitled to the protection accorded trade secrets if the names were built up over a period of time by substantial business effort, advertising, and expenditures of time and money. Witkop & Holmes Co. v. Boyce, 61 Misc. 126, 112 N.Y.S. 874, aff'd, 131 App.Div. 922, 115 N.Y.S. 1150 (1908); Town & Country House & Home Service, Inc. v. Newbery, 3 N.Y.2d 554, 170 N.Y.S.2d 328, 147 N.E.2d 724 (1958). It is no defense to an action by an employer against an employee using such a trade secret that there was no contract or restrictive covenant in force between the employer and employee explicitly prohibiting this conduct. Harry R. Defler Corp. v. Kleeman, 19 A.D.2d 396, 243 N.Y.S.2d 930, appeal dismissed, 13 N.Y.2d 1174, 248 N.Y.S.2d 53, 197 N.E.2d 540 (1963); Sealectro Corp. v. Tefco Electronics, Inc., 32 Misc.2d 11, 223 N.Y.S.2d 235 (Westchester Co.Sup.Ct.1961). Nor does the fact that the employees are serving at the will of the employer justify a conspiracy to use an employer's trade secret in direct competition with the employer. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957). It is not necessary that the trade secret or customer list be impossible to duplicate, only that the list be used by a former employee in violation of his responsibility not to use his employer's efforts to benefit himself at the employer's expense. See Minnesota Mining & Manufacturing Co. v. Technical Tape Corp., 23 Misc.2d 671, 192 N.Y.S.2d 102 (Westchester Co.Sup. Ct.1959).

 Employees cannot conspire to set up a competing business while they are still working for their employer. Duane Jones Co., Inc. v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954); Foley v. D'Agostino, 21 A.D.2d 60, 248 N.Y.S.2d 121 (1st Dept. 1964). The present case is more similar to *Duane Jones* than to Reinforce, Inc. v. Birney, 308 N.Y. 164, 124 N.E.2d 104 (1954), which related to union activity in support of legitimate labor objectives.

 Employees owe a fiduciary duty to their employer even though they may not be officers or directors. Tinsley v. Mavala, Inc., 226 F.Supp. 477 (S.D.N.Y. 1964); Republic Sys. & Program., Inc. v. Computer Assist., Inc., 322 F.Supp. 619 (D.C., 1970).

 The early case of Boosing v. Dorman, 148 App.Div. 824, 133 N.Y.S. 910 (4th Dept. 1912), aff'd, 210 N.Y. 529, 103 N.E. 1121, did not involve any activities of the defendant before the termination of his employment, and was of course decided without regard to the later *Duane Jones* case. Moreover, a substantial number of the customers involved had been secured by the defendant during the course of his employment.

This case is not like Abdallah v. Crandall, 273 App.Div. 131, 76 N.Y.S.2d 403 (3d Dept. 1948), where the defendant had worked only one day for the plaintiff in a small community.

In Tepfer & Sons, Inc. v. Zschaler, 25 A.D.2d 786, 269 N.Y.S.2d 552 (2d Dept. 1966), the court found that money damages were adequate, but here the defendants stepped so far over the line of loyalty owed by an employee to the firm which pays their salaries that monetary damages cannot repair the harm they have done.

It may well be that defendants could have compiled a list of customers similar to plaintiff's based on individual knowledge and access to pages in a telephone directory, but this does not appear to be the case here. The testimony before the court and the affidavits submitted by counsel indicate that defendants quickly and effectively solicited plaintiff's former customers, and that defendants did not compile a list of their own, but relied upon plaintiff's previous efforts.

Plaintiff has shown a reasonable probability of ultimate success on the merits, and of injury that would be irreparable. Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319, 323 (2d Cir. 1969).

This memorandum is intended to contain the court's findings of fact pursuant to F.R.Civ.P. 52(a).

A preliminary injunction will therefore be granted as requested.