Arnold L. Fein, J.
Plaintiff sues (1) to recover moneys advanced to defendants as capital of a proposed joint venture which never came to fruition; (2) for an injunction restraining defendants from using plaintiff’s inventions and trade secrets and the name E & M Communications Corporation; and (3) for an accounting of defendants’ profits derived from the use of such name and the use and sale of products embodying plaintiff’s inventions and trade secrets.
Commencing in early February, 1971, plaintiff Joel Ewen (Ewen) and defendant Arthur Gerofsky (Gerofsky) engaged in discussions concerning some kind of a joint venture in the newly developing field of telephone interconnect devices. At that time plaintiff was employed by Areata Communications Corporation (Areata). The discussions between plaintiff and Gerofsky continued until late March, 1971, when plaintiff’s employment with Areata terminated.
Commencing on or about April 5, 1971, plaintiff began to work at defendants’ premises at a salary of $250 per week paid by defendant Pacesetter Communications Corp. (Pacesetter), then known as Northeastern Sound Systems, Inc. (Northeastern), of which Gerofsky was the incorporator and sole shareholder. Pacesetter was a name selected by plaintiff and reserved with the Secretary of State by plaintiff’s attorney.
Contrary to defendants’ contentions, the record is clear that plaintiff did not start work as a mere employee of Pacesetter. It is manifest that the salary arrangement was merely a device to provide plaintiff an income while he was working at the premises on behalf of defendants and until the continuing negotiations and discussions between plaintiff and Gerofsky would culminate in an agreement as to the form and the terms and conditions of their proposed joint venture.
Plaintiff has failed to establish that by that time Gerofsky *915 had agreed that plaintiff and Gerofsky were each to have a 50% interest in Northeastern in consideration of $25,000 to be paid by plaintiff, $1,500 within 30 days, a further $1,500 within 60 days, $1,000 by contributing materials and equipment and the balance via a weekly deduction of $100 from plaintiff’s salary until the full amount was paid. Undoubtedly Gerofsky indicated assent to some such proposal, but it is clear that the terms and conditions as well as the format of the proposed business entity were still fluid. Equally unresolved were the amount and nature of the capital contributions each would be required to make and their relative interests in such entity. This is evident from the tenor of their prior conversations and their meetings with plaintiff’s lawyers and his accountant. It is further established by the subsequent conversations and actions of the parties, their meeting with Gerofsky’s lawyer and the two draft agreements prepared by Gerofsky’s lawyer which were never executed.
Plaintiff continued to work at defendants’ premises and to provide know-how and expertise and to develop, utilize and merchandise, on their behalf, equipment embodying plaintiff’s ideas, designs, trade secrets and inventions in the field of telephone interconnect and related devices. The discussions and negotiations also continued, with proposals and counter-proposals. Finally, in November, 1971, plaintiff rejected Gerofsky’s last proposal, embodied in a draft agreement prepared by Gerofsky’s lawyer.
Plaintiff thereafter terminated his relationship with defendants as well as further discussions and negotiations. Although the manner of plaintiff’s leaving was hardly laudable, it could not oust him of his rights. He was fully warranted in concluding that there was no likelihood of ever reaching and executing an agreement acceptable to him and to defendants. At best there was an unenforceable agreement to agree, but never an enforceable contract. Plainly Gerofsky was unwilling to enter a binding agreement entitling plaintiff to acquire an agreed upon substantial number of shares of stock in any entity which should conduct the business or any part of it.
It is undisputed that in April and May, 1971, by checks payable to Gerofsky, plaintiff made cash contributions to the capital of the proposed venture in the sum of $3,000.
It is also undisputed that in May, 1971, plaintiff and defendant Northeastern, by Gerofsky, executed a certificate of doing business under the name E & M Communications Company. E *916 & M Communications Corp. was the name of two corporations owned by plaintiff, one a New York corporation, the other a Virginia corporation. Plaintiff was then engaged in litigation with others, which culminated in an agreement permitting plaintiff to obtain that name or qualify his Virginia corporation in New York. Plaintiff and defendants immediately began to use that name, and even plaintiffs stationery with that name, changing only the address. Similarly plaintiffs catalog sheets with that name were reproduced and used by plaintiff and defendants. Nonetheless defendant Gerofsky secretly caused his attorney to reserve the name on his behalf and press releases were issued and published asserting that Pacesetter had acquired the lines and assets of E & M Communications Corporation. This was a clear appropriation of a name having a value because it was known in the business. Defendants knew plaintiff had a prior sole right to its use or at least a one-half interest with defendants.
Plaintiff also furnished defendants with supplies and equipment, the value of which is disputed, and which the court fixes at $1,000.
Plaintiff has failed to establish that defendants agreed that he was to be paid an additional $100 per week, over the $250 salary, to be paid to Gerofsky on account of plaintiffs capital contribution.
Plaintiff’s salary was increased to $350 per week commencing in October, 1971, which was paid through December, 1971 when plaintiff left.
Plaintiff is entitled to recover the sum of $4,000 together with appropriate interest, representing the moneys advanced by him and the value of equipment and supplies furnished by him, less $710 advanced by defendants as the patent lawyer’s fee for a patent obtained by plaintiff.
There remain only to consider plaintiffs rights with respect to defendants’ continuing use of plaintiffs ideas, trade secrets and inventions and the name E & M Communications Corporation. Defendants contend that plaintiff is not entitled to any relief by reason of defendants’ use of such ideas, alleged trade secrets and inventions or the name because (1) plaintiff did not bring any confidential information or trade secrets to defendants because the information had been disseminated through sale and was known to the trade and the public and was available free of charge to any user; (2) plaintiff was employed by defendants as their "director of engineering” *917 whose essential responsibility was the utilization of such ideas and information in designing circuitry for defendants for which he was paid a salary and on which he worked during company time with company material so that ideas and inventions and products embodying them are the sole property of the defendants; (3) by reason of such employment defendants acquired a "shop-right” or irrevocable nonexclusive royalty free license in such ideas, "trade secrets” and inventions entitling defendants to use and produce and sell products embodying them without liability to the plaintiff; (4) there was neither a contract nor a confidential or fiduciary relationship between plaintiff and defendants and no breach of contract or breach of trust and confidence by defendants and defendants are entitled to use said ideas, "trade secrets” and inventions on a nonexclusive basis without obligation to account therefor to the plaintiff.
Defendants further argue that the same principles apply to the use of the name E & M Communications Corporation. In addition, they rely on the fact that substantial sums of money have been invested by the defendants in publicizing the name with plaintiff’s knowledge and consent.
In essence, defendants’ position is that in the absence of proof that plaintiff and defendants entered into a contract breached by defendants or that defendants were guilty of fraud which induced the plaintiff to make the ideas, trade secrets and inventions known to defendants and to utilize them for defendants’ benefit, plaintiff has sustained no compensable injury or damage and defendants have not been unjustly enriched.
As has been noted, plaintiff has failed to prove the existence of a contract or a partnership or a joint venture with the defendants or that he acquired an interest in the corporate defendant or any other Gerofsky entity. Nonetheless, he has established that he was something more than a mere employee whose ideas, trade secrets and inventions belonged to defendants because he was employed by defendants for that very purpose. Despite the fact that there was neither a contract, partnership nor joint venture, it is patent that a relationship of trust and confidence existed between plaintiff and defendants. The information, ideas, trade secrets and inventions were clearly imparted to defendants only on the basis that a joint venture, partnership or other entity would be created in which plaintiff and defendant Gerofsky would be *918 participants and from which both plaintiff and Gerofsky would benefit. The cases relied on by defendants, in support of their assertion of a shop-right in plaintiff’s ideas and inventions, involved mere employees whose ideas and inventions were developed during the course of their employment and not, as here, in connection with a relationship of trust and confidence based on a mutual understanding that a joint business relationship existed or was in the process of creation. Thus, as held in those cases, there was at a minimum a shop-right entitling the employer to a nonexclusive right to utilize the employees’ ideas, inventions and trade secrets (United States v Dubilier Condenser Corp., 289 US 178, 187-189; Standard Parts Co. v Peck, 264 US 52, 58-60).
Equally unavailing is defendants’ contention that plaintiff cannot recover because he has failed to demonstrate that defendants were guilty of fraud in inducing him to make known and available his ideas, trade secrets and inventions. Plaintiff has failed to prove that defendants were guilty of fraud. However, he has established that there was a relationship of trust and confidence, a kind of fiduciary relationship between himself and the defendants. Although no authorities have been cited or found on similar facts, it must be concluded that to permit defendants to utilize plaintiff’s ideas, trade secrets and inventions without compensating him therefor would unjustly enrich defendants to plaintiff’s detriment.
There is no question that the parties contemplated a joint business and not an employer-employee relationship, and that it was on this basis that plaintiff disclosed and used his ideas and inventions. There was an obligation of good faith. The obligation is not confined to persons who actually have become partners or joint venturers but applies in all stages of their connection (Gluck & Co. v Tankel, 24 Mise 2d 841, 846). One does not have a right to secure a trade secret or invention by reason of a confidential relationship and to use it without accounting to the source (Spiselman v Rabinowitz, 270 App Div 548; Riteoff Inc. v Contact Ind, 43 AD2d 731; cf Sealectro Corp. v Tefco Electronics, 32 Misc 2d 11).
Nor is it a defense that by making the ideas and inventions and trade secrets available to defendants there was a dissemination to the trade and the public. (Spiselman v Rabinowitz, supra; Minnesota Min. & Mfg. Co. v Technical Tape Corp., 23 Misc 2d 671, 678-679, 684-685, affd 15 AD2d 960.)
Applying these principles to the facts here found, it is *919 concluded as follows: (1) With respect to Models 301A and 302A which were obsolete, and Models 309A and 31ÓA (interfaces), the evidence is clear that they were produced and sold to the public without restriction substantially prior to plaintiffs association with defendants. Defendants acquired them from Areata, which apparently obtained them from Tele-Assemblies. Plaintiff had designed or improved the design of these models and made them available to Areata or to TeleAssemblies substantially prior to his relationship with defendants. They were available to the trade and the public. Defendants acquired them while plaintiff was still employed by Areata. He has not established any right to preclude defendants from their use or to recover any profits therefrom. (2) Plaintiff is entitled to an injunction, on the second cause of action, restraining defendants from using those trade secrets and inventions brought to defendants by plaintiff or developed by him during his association with them, consisting of Model 505A KTU (paging access or adapter), Models 701 through 703 and 701A (toll restrictor), Model 721A (dictation trunk), Models 602A, 604A, 606A, Models 622A, 624A and 626A (interfaces and improvements thereon), together with the use of the name E & M Communications Corporation, and to recover such profits as defendants have acquired through their use, to be determined on an accounting before an Official Referee to whom the issue is referred to hear and report together with his recommendations. (3) Plaintiff is entitled to judgment on the first cause of action in the sum of $3,290 together with appropriate interest, for moneys and materials advanced and provided by him, less the amounts advanced by defendants for the patent attorney’s fee.
The third cause of action is dismissed as mooted by the disposition of the second cause. All motions not herein disposed of are now denied.
Settle order in accordance with the foregoing, including appropriate provisions referring the accounting to an Official Referee.