**BUCKINGHAM CORPORATION,**
**Plaintiff-Appellee,**

v.

**Stephen I. KARP, Defendant-Appellant.**

**No. 1160, Docket 85–7218.**

United States Court of Appeals,
Second Circuit.

Argued April 12, 1985.

Decided May 22, 1985.

Robert J. Jossen, New York City (Richard D. Weinberg, Martin Nussbaum, Gary R. Clewley, Walter Siegel, Shereff, Friedman, Hoffman & Goodman, New York City, on the brief), for plaintiff-appellee.

MacDonald Flinn, New York City (Richard W. Reinthaler, Dwight A. Healy, Richard B. Sypher, Stephen A. Rickard, White & Case, New York City, on the brief), for defendant-appellant.

Before MANSFIELD, KEARSE and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Stephen I. Karp appeals from an order of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge*, preliminarily enjoining him from entering into or continuing any business relationship with certain of the former suppliers of plaintiff Buckingham Corporation ("Buckingham"). On appeal, Karp contends (1) that the district court applied the wrong legal standard in assessing Buckingham's likelihood of success on the merits of its claims, and (2) that the court's conclusion that Buckingham would be irreparably injured in the absence of a preliminary injunction cannot be sustained. Because we agree with Karp's second contention, we vacate the injunction.

## I. BACKGROUND

Most of the following facts, as found by the district court, do not appear to be in dispute. Buckingham is an importer and distributor of wines and liquors; until early 1985 it had distribution agreements with Baron Phillipe de Rothschild S.A. ("Rothschild"), French supplier of Mouton Cadet wines, and Oy Alko Ab ("Alko"), Finnish supplier of Finlandia vodka. Until November 30, 1984, Karp was Senior Vice President of Buckingham.

Buckingham's distribution agreements with Rothschild and Alko permitted the supplier to terminate its contract if Buckingham underwent a change of control. In June 1984, Buckingham's then-parent, Beatrice Companies, Inc. ("Beatrice"), announced its intention to sell Buckingham.

The district court found that from July 1984 until his resignation from Buckingham on November 30, Karp devoted much of his time and effort to establishing his own relationship with Alko and Rothschild.

In July, Karp informed Alko and Rothschild that he was planning to leave Buckingham, and in August the three entered into discussions of the possibility of forming a joint venture. Karp used Buckingham's records to prepare profit and loss projections for the proposed venture. He formed a new corporation, Principal Imports Ltd. ("PIL"), for the purpose of, *inter alia*, importing and distributing alcoholic beverages. In October, Karp, Alko, and Rothschild discussed a memorandum of understanding prepared by Karp's attorney which provided (1) that Karp would resign from Buckingham, (2) that upon his resignation, Alko and Rothschild would retain him as their consultant, and (3) that as soon thereafter as possible, Karp, Alko, and Rothschild would enter into, *inter alia*, a joint venture agreement, distribution agreements, and an employment agreement.

In October 1984, Beatrice agreed to sell Buckingham to Whitbread (U.S.) Holdings, Inc. ("Whitbread"), and the sale was consummated on November 26, 1984. Buckingham gave Alko and Rothschild notice of the change of control, and the two suppliers responded that they were exercising their rights to terminate the distribution agreements. Karp resigned from Buckingham on November 30 and became a consultant to each supplier by agreements dated November 30. The three parties proceeded to move toward the planned joint venture. The court found that Karp had removed several documents containing confidential information from Buckingham's offices, including Buckingham's consolidated profit and loss review for fiscal 1985, its sales analysis, and parts of its marketing plans for Finlandia and Mouton Cadet.

Buckingham commenced the present suit in February 1985, seeking permanent injunctive relief, and quickly moved by order to show cause for a preliminary injunction (1) enjoining Karp

(a) from taking any action, directly or indirectly, to commence, enter into or continue, a contractual, consulting, joint venture, or other similar relationship with Baron Philippe de Rothschild S.A., or any of its subsidiaries, affiliates or agents; and (b) from taking any steps, directly or indirectly, to divulge to anyone confidential or proprietary trade information belonging to Buckingham; and (2) requiring [Karp] immediately to return to plaintiff all Buckingham documents in his possession.

Buckingham contended that it had been irreparably injured by Karp's actions in that, *inter alia*, it had lost the opportunity to continue distributing the Rothschild and Alko products, which were unique and could not be replaced; Karp would continue to use Buckingham's trade secrets; employee morale had suffered from the loss of the French and Finnish business; and Buckingham's image and stature within the trade and among its other suppliers had suffered and would continue to decline as a result of the appearance that a former employee could with impunity convert both Buckingham's customer accounts and its proprietary information.

In a Memorandum Decision dated March 15, 1985 ("Decision"), the district court concluded that Buckingham had demonstrated a likelihood of success on most, if not all, of its claims. The court concluded that it had been shown likely that Karp, while he was employed as an executive of Buckingham, had impermissibly entered into competition with Buckingham, had misappropriated its corporate opportunity to seek to continue its relationship with Rothschild and Alko through alternative forms of distribution arrangements, and had taken and used for his own purposes documents and confidential information of Buckingham in order to seize its corporate opportunity.

The court concluded that Buckingham had demonstrated that it would suffer irreparable harm from Karp's solicitation of its suppliers and his use of its documents

and confidential information. The court likened the present case to *Arnold's Ice Cream Co. v. Carlson*, 330 F.Supp. 1185 (E.D.N.Y.1971), in which two former employees of the plaintiff had established a competing business and solicited the plaintiff's customers while they were still employed by the plaintiff. It noted that in *Arnold's* " 'the defendants stepped so far over the line of loyalty owed by an employee to the firm which pays their salaries that monetary damages cannot repair the harm they have done'," Decision at 11 (*quoting* 330 F.Supp. at 1188), and held that

> Karp also crossed that line. He secured the suppliers' business for PIL while he was employed by Buckingham. Furthermore, he utilized Buckingham's records to prepare proposals submitted to the suppliers....
>
> ....
>
> Injunctive relief is also warranted because of Karp's removal of confidential information from Buckingham. Where a former employee removes confidential information or trade secrets from a former employer, injunctive relief is the appropriate remedy....
>
> ... The removal and use of these documents causes Buckingham irreparable harm.[5]

Decision at 11–12. In footnote 5, the court stated, "[b]ecause of our finding of irreparable harm from Karp's soliciting of the suppliers and removal of confidential information, we need not reach the plaintiff's other contentions of irreparable harm."

The court's Decision "So Ordered" the Buckingham motion for a preliminary injunction. This appeal followed.

## II. DISCUSSION

On appeal, Karp contends that the district court applied erroneous standards of law in reaching its conclusion that Buckingham had shown a likelihood of success on the merits and that it unjustifiably found that Buckingham had shown that it would be irreparably injured if the injunction were not granted. We are unpersuaded by most of Karp's arguments, but we are in agreement that the harm to Buckingham from Karp's solicitation of the suppliers and removal of documents and confidential information was an insufficient basis for the granting of the preliminary injunction against Karp's doing business with the suppliers.

### A. *The Form and Terms of the Injunction*

At the outset, we must note that the terms of the injunction ordered by the district court are not entirely clear. It does not appear that there was a separate document that set forth the terms of the injunctive order, and we are left to draw inferences from statements in other documents.

Karp's main brief states that Karp has been "enjoined from importing and distributing the Mouton Cadet wines of [Rothschild] and the Finlandia Vodka of [Alko]"; his reply brief describes "the injunction entered below [as] sweeping and ambiguous in scope" (Karp reply brief at 11). Buckingham's brief states that Buckingham moved for a preliminary injunction "enjoining Karp from commencing a business relationship with two of Buckingham's suppliers," and that in the March 15 Decision "the district court granted plaintiff's motion and entered a preliminary injunction." The district court's Decision began by describing Buckingham's motion as one "seeking an order to preliminarily enjoin [Karp] from taking any action to commence or continue any joint venture or other similar relationship with two former suppliers of Buckingham," and stated that it granted the motion: it ended with the words, "We, therefore, grant the plaintiff's motion for a preliminary injunction. SO ORDERED."

All of these descriptions of Buckingham's motion, the exact language of which is quoted in Part I above, are at once expansive and restrictive. They are expansive because Buckingham's motion had not in fact mentioned Alko; it specified only Rothschild and its subsidiaries as the companies with which Buckingham sought to

enjoin Karp's alliance. They are restrictive because Buckingham's motion had requested, in addition, an order forbidding Karp to use Buckingham's confidential information and requiring him to return its documents. The district court found that Karp had taken Buckingham documents and had used confidential information, and it could well have intended that its decision grant plaintiff's entire motion, not just that portion that dealt with the consummation of Karp's relationship with the suppliers. The court did not so state, although its statement that Buckingham's motion was granted could be so read.

Fed.R.Civ.P. 65(d) provides that "[e]very order granting an injunction ... shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...." This case is excellent proof of the wisdom of that requirement.

In any event, for purposes of this appeal, we treat the district court's order as one enjoining Karp solely from taking any action, directly or indirectly, to commence, enter into, or continue a contractual, consulting, joint venture, or other similar relationship with Rothschild or Alko. The district court is free on remand to enter an order complying with Rule 65(d) that enjoins Karp from disclosing any confidential information belonging to Buckingham and requires him to return to Buckingham all of its documents in his possession.

## B. *Irreparable Injury*

The purpose of a preliminary injunction is to protect the moving party from irreparable injury during the pendency of the action. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 951, 39 L.Ed.2d 166 (1974); *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981); *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir.1967); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2942,

at 368–70, § 2948, at 431–34 (1973). In order to obtain a preliminary injunction in this Circuit the moving party must establish (1) the threat of irreparable harm in the absence of an injunction and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious ground for litigation and a balance of hardships tipping decidedly in its favor. *E.g., Sperry International Trade, Inc. v. Government of Israel*, 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). The ultimate question on appellate review of a district court's issuance of a preliminary injunction is whether, in light of the applicable standard, the court has abused its discretion. *Doran v. Salem Inn, Inc.*, 422 U.S. at 931–32, 95 S.Ct. at 2567–68; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206 (2d Cir.1979). We conclude that, in light of the nature of the injury to Buckingham relied on by the district court, the granting of the preliminary injunction was an abuse of discretion.

The irreparable injury found by the district court and relied on for purposes of satisfying the above test was Karp's solicitation of Buckingham's suppliers and his removal and use of Buckingham's documents. There is no basis for inferring, however, that all of this injury is ongoing and can be halted by a preliminary injunction against Karp's doing business with the suppliers. To the extent that Karp may be continuing to use Buckingham's documents or information, the proper interim remedy would be an injunction against such use. As we have discussed in Part II.A. above, the district court may have intended its order to include such relief and it is free to enter such an order on remand. But neither injunctive provisions of that sort nor the injunction against Karp's continuing or entering into relationships with Rothschild and Alko can realistically be thought likely to bring the suppliers back to Buckingham. The district court was provided with no basis for believing that an injunction against Karp might induce Rothschild or Alko to resume its relationship with Buck-

ingham. Rather, those suppliers had given sworn statements that they would never return to Buckingham. Events subsequent to the district court's opinion have done nothing to lessen the improbability that an injunction would bring the suppliers back to Buckingham. Thus, we were advised at oral argument that on March 26 Whitbread sued Rothschild and Karp for $45 million in actual damages and $100 million in punitive damages on the theory that, beginning in August 1984, the suppliers fraudulently sought to induce Whitbread to purchase Buckingham just so that they *could* terminate their distributorship agreements with Buckingham. And post-argument news reports state that Rothschild and Alko have signed distribution agreements with Heublein Inc. *Heublein Named Exclusive Importer,* Adweek, April 29, 1985 (Midwest ed.); *Fountainhead of News: Atlanta,* Ad Day, April 25, 1985, at 1; United Press International, Regional News (April 23, 1985, April 24, 1985) (all available May 17, 1985, on NEXIS, Omni library).

▮ Thus it appears that Buckingham's loss of its two suppliers is purely past injury. Though the damage flowing from the injury, in terms of lost profits, may last well into the future, that damage is compensable through monetary award. And though the conduct of Karp may have been reprehensible, inequitable conduct alone cannot justify the entry of a preliminary injunction. The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction. *E.g., Capital City Gas Co. v. Phillips Petroleum Co.,* 373 F.2d at 131 ("The most significant condition which must be present to support the granting of a temporary injunction is a showing that if the relief is not granted irreparable injury during the pendency of the trial will result."). In the present case the loss of the suppliers does not constitute a threatened irreparable ongoing or future injury that this injunction could forestall.

Buckingham argues that the injury to it from Karp's conduct consists not just of its loss of Rothschild and Alko, but also includes injury to its reputation in the trade, loss of morale among its employees, and the possible loss of other suppliers, which it points out are ongoing or future, not merely past, injuries. Although we might well have found no abuse of the court's discretion in granting a preliminary injunction based upon a finding that injuries such as those just listed were occurring and could be fended off by such relief, and although findings of such injuries could well justify the ultimate granting of a permanent injunction, we cannot sustain the present preliminary injunction on that basis because the district court expressly declined to reach these claims of injury. Decision at 12 n. 5.

▮ The cases relied on by the district court for its conclusion that the injury it found Buckingham had suffered was sufficient to warrant the granting of preliminary injunctive relief are unpersuasive in the present circumstances. First, several of the cases relied on dealt with permanent injunctions, not preliminary injunctions. Though the appropriateness of both permanent and preliminary injunctions depends on equitable considerations and the adequacy of monetary relief, "irreparable injury is not an independent requirement for obtaining a *permanent* injunction...." 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2944, at 401 (emphasis added); *accord Lewis v. S.S. Baune,* 534 F.2d 1115, 1123–24 (5th Cir.1976); *see Restatement (Second) of Torts* § 936 comment *e* (1979). Thus, cases involving the issuance of permanent injunctions are not necessarily useful in determining what constitutes the threat of irreparable injury.

Further, the preliminary injunction cases on which the court placed principal reliance hinged on findings of present and ongoing injury that simply were not made in the present case. Thus in *Arnold's Ice Cream Co. v. Carlson,* 330 F.Supp. 1185, not only had 45 of the plaintiff's former customers stopped dealing with the plaintiff after plaintiff's former employees had lured them away, but the court found that 85 additional customers were still being solic-

ited by the defendants, and there seemed to be a strong possibility that they too might stop dealing with the plaintiff. There being no finding here that any of Buckingham's relationships with other suppliers was threatened, the present case is far weaker than *Arnold's* in terms of the propriety of interim injunctive relief. Similarly, the facts found in *Engine Specialties, Inc. v. Bombadier Ltd.*, 454 F.2d 527 (1st Cir.1972), in which the plaintiff had lost one of its suppliers to the defendant, were far more indicative of ongoing injury than those of the present case. There, the court found that the plaintiff's relations with its dealers had been severely impaired by the defendant's actions and that plaintiff's sales were markedly down, and it suggested that the plaintiff was threatened with extinction. In the present case, the district court made no findings of this sort, though urged to do so by Buckingham.

In sum, we conclude that since the only pertinent injury found by the district court consisted of past injury that may be remedied by an award of damages, that injury could not justify the issuance of a preliminary injunction.

CONCLUSION

The order of the district court enjoining Karp from commencing or continuing a business relationship with Rothschild or Alko is vacated. On remand, we would hope that the district court's schedule would permit an expedited trial leading to the entry of appropriate ultimate relief.

No costs.

MANSFIELD, Circuit Judge (concurring in part and dissenting in part):

I concur in Section "I." and Section "II. A" of the majority opinion. However, I dissent from Section "II. B" to the extent that it precludes the entry on remand of a revised preliminary injunction barring Karp from commencing or continuing a business relationship with Rothschild or Alko and from disclosing confidential information belonging to Buckingham.

The majority's assumption that a preliminary injunction against Karp could not possibly induce Rothschild or Alko to return to Buckingham is based on (1) statements of Rothschild and Alko that they would not do so and (2) post-argument news reports to the effect that they had signed an agreement with Heublein Co. As for the first of these reasons, Rothschild and Alko's statements are self-serving, and nothing prevents them from changing their stance. They might well be inclined to do so if Karp remained unavailable to them, especially since a resumption of their relations with Buckingham might enable them to induce Whitbread to drop its pending suit against them. The second reason—a rumored agreement with Heublein—is on this record speculation.

Certainly Karp's conduct at the time of the district court hearing threatened irreparable harm to Buckingham. The "facts" now relied upon by the majority as a basis for reversing the grant of preliminary relief on the ground that this threatened harm does not continue are far from established. Indeed, the district court seems to have impliedly found to the contrary. For these reasons I favor continuing the preliminary injunction in effect pending further findings by the district court on remand with respect to any continuing irreparable injury, including whether Rothschild and Alko have entered into a firm distributorship agreement with Heublein or anyone else which would preclude their renewing relations with Buckingham, and pending a revision of the terms of the injunction to eliminate any ambiguity as to (1) the prohibition of Karp from using Buckingham's trade secrets, and (2) the requirement that he return the purloined confidential corporate documents to it. If, upon remand, the district court should find that Rothschild and Alko have entered into a binding agreement with Heublein or someone else, precluding their resumption of relations with Karp or Buckingham, nothing would prevent the district court from then vacating that portion of the preliminary injunction prohibiting Karp from entering into a business relationship with Rothschild and Alko.