ENGINE SPECIALTIES, INC.,
Plaintiff-Appellee,

v.

BOMBARDIER LIMITED, Defend-
ant-Appellant.

No. 71–1293.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1971.

Decided Jan. 20, 1972.

John Vanderstar, Washington, D. C., with whom George H. Lewald, William L. Patton, Ropes & Gray, Boston, Mass., and Covington & Burling, Washington, D. C., were on brief, for defendant-appellant.

Thayer Fremont-Smith, Boston, Mass., with whom Robert S. Frank, Jr., and Choate, Hall & Stewart, Boston, Mass., were on brief for plaintiff-appellee.

Before ALDRICH, Chief Judge, BREITENSTEIN,[*] Senior Circuit Judge, and COFFIN, Circuit Judge.

BREITENSTEIN, Senior Circuit Judge.

This appeal relates to the grant of a preliminary injunction, and not to the merits of the controversy. Plaintiff-appellee, Engine Specialties, Inc. (ESI), sought and obtained a preliminary injunction restraining defendant-appellant, Bombardier, Ltd. (Bombardier), from marketing in North America certain mini-bikes or mini-cycles [1] manufactured by an Italian corporation, Agrati-Garelli, S.p.A. (Agrati).

ESI, a Pennsylvania corporation with its principal office in that state, distributes recreational vehicles including mini-cycles. ESI had contracted with Agrati for Agrati to manufacture and sell mini-cycles to ESI for distribution under ESI's trade name "Bronco." ESI's action was based on claims that Bombardier, a Canadian corporation which manufactures snowmobiles, had tortiously induced Agrati to breach its contract with ESI, had maliciously interfered with a profitable business relationship between ESI and Agrati, and had violated the federal anti-trust laws. Agrati is not a party to the action. The district court, D.C., 330 F.Supp. 762, after finding that ESI was likely to prevail on the merits and was suffering irreparable harm, entered a preliminary injunction against Bombardier.

The initial 1967 ESI-Agrati contract was supplemented in 1968 and 1970. The 1968 agreement covered further sales of mini-cycles to ESI by Agrati, shipping schedules, and procedures concerning letters of credit. It also provided that after one year either party could cancel the agreement upon six months notice, and that, if Agrati cancelled, it would be precluded from selling in North America certain mini-cycles for one or two years depending on the model involved. The 1970 agreement, among other things, amended the 1968 agreement so that any default by ESI continuing for 20 days would terminate the 1968 agreement, and more importantly would void the covenant not to compete.

In August, 1970, representatives of Bombardier and Agrati met in Canada to discuss possible arrangements between them for the manufacture and sale of mini-cycles in the United States and Canada. Nothing concrete came of that meeting, but as the discussions progressed Bombardier became aware of the ESI-Agrati contract. Bombardier unsuccessfully attempted to persuade ESI to relinquish its distributorship contract. On September 16, Agrati decided to invoke the six-month termination clause and, thereafter, Bombardier and Agrati discussed possible methods of "getting around" the covenant not to compete.

The course of business dealings between Agrati and ESI had not complied strictly with their contractual agreements. At various times issues arose over shipping schedules and letters of

---

[*] Of the Tenth Circuit, sitting by designation.

[1]. Apparently, a mini-cycle is similar to a light weight motorcycle, and a mini-bike is somewhat smaller than a mini-cycle. Hereinafter only the term mini-cycle will be used.

credit which might have indicated a default by one of the parties. Neither party was inflexible, and matters were amicably settled. On October 16, 1970, Agrati wrote ESI, complained about letters of credit and shipping schedules, and said that because of irregularities ESI was considered to be in default of the 1968 agreement. However, on October 19 Agrati telephoned ESI and agreed to new shipping schedules. By an October 26 letter to Agrati, ESI contested the default claim and asserted that the difficulties had been caused by Agrati, that the October 19 telephone conversation had taken care of the matter, and that ESI had complied with the shipping agreements. On November 6, Agrati cabled ESI and demanded that letters of credit be opened for forthcoming shipments.

On November 7, Bombardier and Agrati representatives met in Philadelphia. On November 15, ESI cabled Agrati in response to the November 6 cable and requested a shipment delay of 10–15 days. By a November 25 letter Agrati wrote ESI that the 1968 and 1970 agreements had been immediately terminated because of ESI's failure to open letters of credit and meet shipping schedules. Since then, Agrati has refused to supply ESI with mini-cycles or parts. On December 8, ESI opened a letter of credit for the November shipment and so informed Agrati. In reply Agrati confirmed the November 25 letter and said that further inquiries should be made through their lawyers. Since December, Agrati has supplied Bombardier with Bronco-type mini-cycles for distribution in the United States and Canada.

Bombardier was served by mail at its corporate headquarters in Canada. The first question is whether extraterritorial service suffices to subject Bombardier to in personam jurisdiction. Reliance is had on the Massachusetts long arm statute and on the federal anti-trust statutes. The record is unclear as to which basis was held by the trial court to sustain its jurisdiction.

The applicable provisions of the Massachusetts long arm statute are, Mass. G.L. c. 223A, § 3:

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's * * *

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth; * * *."

ESI has no offices or place of business in Massachusetts. Bombardier does not have a place of business in Massachusetts, but does have one of its two wholly owned American subsidiaries there. Agrati has no place of business in Massachusetts.

The applicability of the statute depends on whether there has been a "tortious injury in [the] commonwealth" as the result of Bombardier's actions. *See, e. g.,* Mark v. Obear & Sons, Inc., D. Mass., 1970, 313 F.Supp. 373. Bombardier says that any measure of injury would be the loss of ESI profits and that such loss would occur at ESI's principal place of business, in Pennsylvania. ESI responds that in 1970 more than $130,000 worth of mini-cycles were sold by its franchised distributor in Massachusetts and that its sales and goodwill obtained, in part by advertising in the commonwealth have been injured by Bombardier's sale of Bronco-type mini-cycles. In our opinion the claim of impairment of ESI's Massachusetts business is a sufficient assertion of tortious injury in the commonwealth.

Bombardier says that if the action satisfies the requirements of the long arm statute, its application is unconstitutional in the light of the principles of

fairness and convenience set forth in International Shoe Co. v. Washington, 1945, 326 U.S. 310, 316–317, 66 S.Ct. 154, 90 L.Ed. 95. Bombardier's efforts to minimize its contacts in Massachusetts are not impressive. It has there a wholly owned subsidiary, Bombardier East, with interlocking directors and officers. In 1970 it sold $5,325,000 worth of products to its subsidiary. The parent exercises financial and managerial supervision over its subsidiary and carries on extensive sales campaigns in Massachusetts.

We recognized in Seymour v. Parke, Davis & Company, 1 Cir., 1970, 423 F.2d 584, 585–586, that *International Shoe*, by substituting principles of fairness and convenience for earlier concepts of presence, restricts as well as enlarges jurisdictional concepts. In *Seymour,* a Massachusetts resident was injured in that state but, because its statute of limitations had run, brought suit in New Hampshire under its long arm statute. The plaintiff had no contracts with New Hampshire and the defendant's activities in that state were advertising and employing salesmen to solicit orders. We held that the lack of fairness prevented the assumption of jurisdiction, and recognized an exception when the defendant had significantly entered the business life of the forum community. *Ibid.* at 587. Bombardier significantly entered the business life of Massachusetts. Having done so, it may not now avoid the "distasteful consequences" of suit. Volkswagen Interamericana, S. A. v. Rohlsen, 1 Cir., 1966, 360 F.2d 437, 441, cert. denied 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143. In our opinion jurisdiction lies under the Massachusetts long arm statute. In the circumstances there is no reason to discuss jurisdiction under the federal anti-trust laws.

■■ After a hearing at which both sides relied on a mass of affidavits, depositions, and documents, the court granted the preliminary injunction which is now under attack. To prevail Bombar-

dier has the heavy burden of showing a clear error of law or an abuse of discretion. Automatic Radio Mfg. Co. v. Ford Motor Company, 1 Cir., 1968, 390 F.2d 113, 115, cert. denied 391 U.S. 914, 88 S.Ct. 807, 20 L.Ed.2d 653. The clearly erroneous rule is applicable even where, as here, a finding is based on documentary evidence or undisputed facts. Leach v. Crucible Center Company, 1 Cir., 1968, 388 F.2d 176, 179.

■ Bombardier attacks three findings of fact. The first relates to the finding that Agrati waived any contract defaults by ESI. On the basis of correspondence and the affidavit of the president of ESI, the court found that the ESI-Agrati course of conduct operated to waive conditions pertaining to letters of credit and shipping schedules and that Agrati's conduct negated the implication that the contract was dead for want of compliance by ESI. Bombardier's disagreement with the court's interpretation of the events does not make the finding erroneous. We believe that the court placed a reasonable interpretation on the facts and that its finding of waiver is sustained by the record.

Next, Bombardier argues that if there was waiver, the finding that Bombardier had knowledge of it is clearly erroneous. The court painstakingly reviewed the facts and found that the circumstances of the November meeting between Bombardier and Agrati representatives and the initial draft of a Bombardier-Agrati agreement, along with other evidence, established knowledge by Bombardier. Here again the finding has record support and we accept it.

■ Finally, the finding of irreparable injury is attacked. Bombardier argues that ESI had other models of mini-cycles to sell and that its sales do not reflect irreparable harm because of loss of the Agrati line. The trial court pointed out that in addition to loss of an item which ESI had successfully marketed since 1967, "it must compete against

the sale of that very item by defendant;" that ESI sales were "markedly off" from preceding years; that its relations with its dealers have been severely impaired; and that these types of harm were not "readily computable or recompensable in money damages." The Agrati mini-cycles were ESI's best selling item and there is evidence that the loss of that item had turned ESI from a profitable business into an unprofitable one. An injunction is proper to prevent the threatened extinction of a business, Semmes Motors, Inc. v. Ford Motor Company, 2 Cir., 1970, 429 F.2d 1197, 1205, and to prevent disruption of a company's relationship with its dealers, Bergen Drug Company, Inc. v. Parke, Davis & Company, 3 Cir., 1962, 307 F.2d 725, 728. We are satisfied with the showing of irreparable injury.

Bombardier's last argument is that the grant of the preliminary injunction was an abuse of discretion. It says that the ESI-Agrati contract contained an arbitration provision which precludes ESI from proceeding against Bombardier. The arbitration agreement was a matter between ESI and Agrati. Bombardier was not a party to it. The inability of ESI to sue Agrati for breach has nothing to do with the tort claim which ESI asserts against Bombardier.

The argument that, because the injunction cannot restore the Agrati line to ESI, it serves no purpose other than punishing Bombardier does not impress us. The injunction is preventative because the record shows that Bombardier's marketing of the Agrati mini-cycles was irreparably injuring ESI. The record convinces us that "the balance of hardships" clearly tips in favor of ESI, Hamilton Watch Co. v. Benrus Watch Co., 2 Cir., 1953, 206 F.2d 738, 740, and that the court did not abuse its discretion in granting the preliminary injunction.

The order granting the preliminary injunction is affirmed.