**BUCKEYE ASSOCIATES, LTD.**

v.

**FILA SPORTS, INC., et al.**

**Civ. A. No. 85–1031–Y.**

United States District Court, D. Massachusetts.

Sept. 4, 1985.

---

Evan T. Lawson, Lawson & Wayne, Boston, Mass., for plaintiff.

Lawrence J. Crowley, Jr., Julius Thannhauser, Riemer & Braunstein, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Buckeye Associates ("Buckeye") brought this action against defendants Fila Sports, Inc. ("Fila USA") and Fila

Sports, S.P.A. ("Fila Italy"), seeking damages for alleged violations of the federal antitrust laws, breach of contract, misrepresentation, interference with advantageous relations, unfair and deceptive trade practices in violation of the Massachusetts Consumer Protection Act, violation of the Massachusetts Antitrust Act, and violation of the California Unfair Trade Law. Buckeye asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and general principles of pendent jurisdiction. The defendants have moved to dismiss the complaint for lack of personal jurisdiction or, in the alternative, to dismiss on the ground of forum non conveniens. For the reasons that follow, the motion is granted on the ground that Buckeye has failed to establish personal jurisdiction over the defendants.[1]

The defendants' motion is accompanied by a lengthy brief and affidavits executed by the president of Fila USA, the chief executive officer of Fila Italy, and the legal counsel of Fila Italy. Buckeye's counsel appeared at an oral hearing on the motion but filed nothing in response to the defendants' papers.[2]

When jurisdiction is properly challenged, the plaintiff has the burden of establishing sufficient facts upon which the court can exercise personal jurisdiction over the defendant. *American Freedom Train Foundation v. Spurney*, 747 F.2d 1069, 1075 (1st Cir.1984). To establish personal jurisdiction, the plaintiff "must go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979).[3] Although the Court has considered the allegations in the complaint, the resolution of this motion essentially turns on whether the facts set forth in the defendant's own affidavits establish personal jurisdiction.

In analyzing whether it has personal jurisdiction over a defendant, a court must engage in a two-step inquiry: (1) Is the court authorized by either a federal or state statute to exercise jurisdiction? (2) Even if there is statutory authorization, does the defendant have the requisite minimum contacts with the jurisdiction so that the exercise of personal jurisdiction will comport with due process? *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Because Buckeye chose not to file any papers in opposition to the motion to dismiss, it is unclear what statute Buckeye is relying on to assert personal jurisdiction. However, at the oral hearing, the parties focused on two statutory sources of jurisdiction: (1) Section 12 of the Clayton Act,

---

1. It is therefore unnecessary to reach the issue of forum non conveniens.

2. Buckeye not only failed to respond to the defendants' memorandum and affidavits, it resisted the defendants' discovery efforts relating to this jurisdictional issue. On April 13, 1985, the defendants served notices for taking the depositions of Buckeye's president and a designated officer of Buckeye pursuant to Fed.R. Civ.P. 30(b)(6). The depositions were scheduled for April 24, 1985 and were limited solely to the issue of personal jurisdiction. In response to these deposition notices, Buckeye moved for a protective order vacating the notices on the grounds that "justice requires protection of its officers from oppression and undue burden and expense" and that "the plaintiff is located out of state and its officers have busy schedules."

3. In *Chlebda*, the defendant moved to dismiss for lack of personal jurisdiction and supported its motion with an affidavit indicating a lack of contacts with the forum. The plaintiff filed a memorandum in opposition to the motion but filed no counter-affidavits. After the motion to dismiss was granted, the plaintiff argued on appeal that the allegations in her complaint must be accepted as proven for purposes of resolving the issue of personal jurisdiction. The Court of Appeals characterized this argument as an "elementary mistake." In affirming the district court's dismissal of the complaint, the Court held that the plaintiff must go beyond pleadings to establish personal jurisdiction. 609 F.2d at 1024; *see Geist v. Martin*, 675 F.2d 859, 862 (7th Cir.1982); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929–30 (6th Cir.1974) ("Where a motion [to dismiss for lack of personal jurisdiction] is filed, supported by affidavits, the nonmoving party may not rest upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction.")

15 U.S.C. § 22, and (2) the Massachusetts long arm statute, Mass.Gen.Laws c. 233A, § 3.[4] Those statutes do indeed provide the appropriate starting point in analyzing jurisdiction in this case.

## I. *Section 12 of the Clayton Act*

Buckeye has asserted three claims under the federal antitrust laws. Thus, it is entitled to look to a relevant federal statute for serving process on the defendants. Fed.R. Civ.P. 4(e). Section 12 of the Clayton Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (1982).

Section 12 is a venue statute which also provides worldwide service of process if the specified venue requirements are satisfied. Because venue is "primarily a matter of convenience of litigants and witnesses," *Denver & Rio Grande Western R.R. Co. v. Brotherhood of R.R. Trainmen,* 387 U.S. 556, 560, 87 S.Ct. 1746, 1748, 18 L.Ed.2d 954 (1967), it should be distinguished from personal jurisdiction. Likewise, service of process should be distinguished from personal jurisdiction—service of process is the mechanism by which the commencement of an action is brought to the notice of a defendant. Wright & Miller, *Federal Practice and Procedure: Civil* § 1063 (1969). Consequently, compliance with Section 12 does not by itself confer personal jurisdiction over a defendant. This Court can properly exercise jurisdiction over the defendants only if the due process requirements of *International Shoe* and its progeny are satisfied. *Sportmart, Inc. v. Frisch,* 537 F.Supp. 1254, 1257 (N.D.Ill. 1982).

Although Section 12 is primarily a venue statute, some federal courts have suggested that the analyses of venue and personal jurisdiction are "virtually congruent, since both are controlled by general due process principles." *Id.; see Smokey's of Tulsa v. American Honda Motor Co.,* 453 F.Supp. 1265, 1267 (E.D.Okla.1978) ("[T]he jurisdictional issue hinges upon the determination regarding venue, to wit: if venue is proper [under Section 12] so is. in personam jurisdiction; if venue is improper and the action is dismissed as to this defendant on account thereof, the jurisdiction question becomes moot and need not be resolved.") Because the Court rules that the venue requirements of Section 12 are not satisfied in this case, it is unnecessary to decide whether those requirements are congruent with the due process requirements of the United States Constitution.[5]

---

**4.** This focus is consistent with the complaint, which asserts that "[v]enue is proper in this district pursuant to both s. 12 of the Clayton Act, 15 U.S.C., s. 22, and 28 U.S.C., s. 1391 since the claim asserted herein arose in this district because the defendant committed tortious acts in this district, and because the defendants transact and do business within the district." Complaint ¶ 3.

**5.** Personal jurisdiction in federal question cases is a matter of federal law, to be governed by the due process standards of the Fifth Amendment rather than the Fourteenth Amendment. *Stanley Works v. Globemaster, Inc.,* 400 F.Supp. 1325, 1334 n. 13 (D.Mass.1975). As a general proposition, the Fifth Amendment would permit a federal court to exercise personal jurisdiction over a defendant in a federal question case by looking to the defendant's aggregate contacts with the United States as a whole, without regard to the defendant's contacts with the forum state. *See, e.g., Holt v. Klosters Rederi A/S,* 355 F.Supp. 354, 356–57 (W.D.Mich.1973).

Courts have differed as to whether there must be a clear manifestation of Congressional intent before a district court can use such an "aggregate contacts" test in all federal antitrust cases. *Compare Superior Coal Co. v. Ruhrkohle, A.G.,* 83 F.R.D. 414 (E.D.Pa.1979) *with Centronics Data Computer Corp. v. Mannesmann, A.G.,* 432 F.Supp. 659 (D.N.H.1977). The better rule is there must be specific statutory authority. That is, to obtain service and personal jurisdiction on the basis of the defendant's aggregate contacts with the nation as a whole, there must be a federal statute authorizing such action. *Superior Coal Co., supra* at 418; *see generally* Hoven-

■ Under Section 12, venue is appropriate in any district where the defendant is an inhabitant, where it may be found, or where it transacts business. A corporation is an "inhabitant" of the state of its incorporation. *Aro Mfg. Co. v. Automobile Body Research Corp.*, 352 F.2d 400 (1st Cir.1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966). Neither of the defendants in this case is incorporated in Massachusetts and thus neither is an "inhabitant" of this district. Therefore, the defendants must either be "found" or "transacting business" in Massachusetts for venue to be proper in this district. A corporation must engage in more extensive activities to be "found" within a district than it must to be "transacting business" there. *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182 (D.D.C.1984); *Haskell v. Aluminum Co. of America*, 14 F.2d 864 (D.Mass.1926). Consequently, the Court need only determine whether either or both of the defendants transacts business in Massachusetts.[6]

■ Whether a defendant has "transacted business" within a particular district sufficient to create venue under Section 12 is a factual question to be determined in each individual case. *Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1257 (N.D.Ill. 1982). This test of venue has been described as "the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character." *United States v. Scophony Corp.*, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). The general standard is that "isolated and sporadic contacts with the forum state are not sufficient to constitute transacting business; the business transacted must be of a substantial character, and it must have some degree of continuity." *Grappone, Inc. v. Subaru of America, Inc.*, 403 F.Supp. 123, 130 (D.N.H. 1975). Among factors to be considered in applying this standard are: (1) place to do business; (2) people to carry on business; (3) tangible property; (4) subjection to state regulation; (5) business operations; (6) manifestations of doing business; and (7) goodwill activities. *Agra Chem. Distrib. Co. v. Marion Laboratories, Inc.*, 523 F.Supp. 699, 702 (W.D.N.Y.1981).

■ Applying these standards to the case at bar, the Court rules that neither of the defendants transacts business in this district for purposes of Section 12. First, with respect to Fila Italy, the affidavit executed by Angiolo Tacci (the CEO of Fila Italy) states that Fila Italy is organized under the laws of Italy, its corporate offices are located in Italy, all of its corporate officers and employees are in Italy, it manufactures all of its merchandise in Italy, it owns no real property outside Italy, and its only bank accounts are located in Italy, Switzerland, and Austria. Fila Italy has no assets in the United States except that it is the sole shareholder of Fila USA. Fila USA is a wholly owned subsidiary of Fila Italy and acts as Fila Italy's exclusive U.S. distributor of merchandise manufactured in Italy by Fila Italy.

Pursuant to their exclusive distribution agreement, Fila USA purchases merchandise from Fila Italy's factory in Biella, Italy. Title is taken by Fila USA in Italy and

kamp, Personal Jurisdiction and Venue in Private Antitrust Actions in the Federal Courts: A Policy Analysis, 67 *Iowa L.Rev.* 485, 498–502 (1982). If there is no such federal statute, the federal court must then look to the long arm provisions of the forum state to obtain personal jurisdiction, even in federal question cases.

6. There is a split of authority as to whether the appropriate time for analyzing facts relating to venue under the "transacting business" clause is the time the suit was commenced or the time the cause of action accrued. *Compare Agra*

*Chem. Distrib. Co. v. Marion Laboratories, Inc.*, 523 F.Supp. 699 (W.D.N.Y.1981) *with Board of County Commissioners v. Wilshire Oil Co.*, 523 F.2d 125 (10th Cir.1975). Because there is nothing in this record to suggest that there was any change in either of the defendants' contacts with Massachusetts between the time the cause of action accrued in 1984 and the time suit was commenced in 1985, the analysis focuses on the events of 1984.

all risk of loss shifts to Fila USA at the time of transfer. The only business conducted in the United States by Fila Italy involves several advertising and sponsorship agreements with certain American athletes; none of those agreements were made in Massachusetts. Officers or employees of Fila Italy occasionally travel to the United States to meet with Fila USA representatives or customers or to visit trade shows, but none of these activities is regularly conducted in Massachusetts.

On the basis of these uncontroverted facts, Fila Italy does not transact business in Massachusetts within the meaning of Section 12. In fact, Buckeye has not shown that Fila Italy has any contacts whatsoever with Massachusetts. At the oral hearing on the motion to dismiss, there was a suggestion that Buckeye may be attempting to reach Fila Italy through the business activities of its subsidiary, Fila USA, on an "alter ego" theory. However, even if Fila USA was found to be subject to personal jurisdiction and venue in this district, its activities cannot be attributed to Fila Italy. The affidavit of Franco Maula (legal counsel for Fila Italy) indicates that Fila Italy and Fila USA do not share any officers, board members, or employees. Buckeye has offered no evidence to suggest that Fila Italy controls or directs the activities of its subsidiary. Because the two companies are separate and distinct corporate entities, Fila Italy cannot be reached on an "alter ego" theory. *See Global Publishing Corp. v. Grolier, Inc.,* 273 F.Supp. 637 (D.Mass.1967).

Turning to Fila USA, the affidavit executed by Pietro Fenu (the president of Fila USA) states that Fila USA is organized under the laws of California, all of its corporate officers and employees are located in California, all of its merchandise is manufactured in Italy and warehoused in Cali-

fornia, its only bank accounts are located in California and New York, and its only interests in real property are leasehold agreements in California and New York. Fila USA contracts with independent sales representatives throughout the United States to obtain acceptable purchase orders for the sale of Fila merchandise, but none of those independent sales representatives reside in Massachusetts.

According to Mr. Fenu's affidavit, the only contact by Fila USA with Massachusetts is the following: one of Fila's independent sales representatives obtains orders from, and Fila USA ships merchandise to, several national department store chains which have outlets in Massachusetts. The merchandise is sold F.O.B. in California, title is taken in California, and risk of loss passes to the purchaser at the time of shipment in California.[7] Fila USA's total sales in Massachusetts amounted to less than two percent of its total gross sales nationwide in 1984.

The fact that Fila USA's sales in Massachusetts constituted only a small percentage of the company's total business is not dispositive. The determination of whether a defendant corporation's activities are of a "substantial character" within the meaning of Section 12 is generally based on the point of view of the "average businessman," and several courts have properly rejected the view that "substantiality" should be tested by looking to the percentage of the defendant's business conducted within the forum district. *E.g., Green v. United States Chewing Gum Mfg. Co.,* 224 F.2d 369 (5th Cir.1955). On the other hand, there must be evidence of a "systematic, continuous carrying on of business" to satisfy the requirements of Section 12. *Brandt v. Renfield Importers, Inc.,* 278 F.2d 904 (8th Cir.) *cert. denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 226 (1960).

---

**7.** This fact, by itself, is not compelling. If a defendant makes substantial sales on a continuous basis within a forum district, he cannot escape jurisdiction and venue in that district simply by requiring shipments to be made

F.O.B. outside the forum. *See State of Illinois v. Harper & Row Publishers, Inc.,* 308 F.Supp. 1207, 1209 n. 7 (N.D.Ill.1969). However, it is one factor to be considered in analyzing a defendant's manner of doing business.

While it seems clear that some Fila products make their way into Massachusetts, there is insufficient evidence to conclude that Fila USA's contacts with this district are systematic, continuous, or substantial. Therefore, the Court rules that Fila USA does not transact business in Massachusetts within the meaning of Section 12.

## II. *The Massachusetts Long Arm Statute*

■ Because several of Buckeye's claims are brought on the basis of diversity of citizenship or the principles of pendent subject matter jurisdiction, it is necessary to discuss the personal jurisdiction question in the context of the Massachusetts long arm statute.[8] State law controls the determination of personal jurisdiction over a foreign corporation with regard to claims brought under diversity of citizenship, *Boston Super Tools, Inc. v. RW Technologies*, 467 F.Supp. 558, 560 (D.Mass.1979), as well as any state law counts appended to a federal antitrust claim. *Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1256 n. 5 (N.D.Ill. 1982).

■ Two questions must be answered affirmatively in order for this Court to properly exercise personal jurisdiction over nonresident defendants under the Massachusetts long arm statute: (1) Is the assertion of jurisdiction authorized by the statute? (2) If so authorized, is the exercise of jurisdiction under state law consistent with basic due process requirements mandated by the United States Constitution? *Hahn v. Vermont Law School*, 698 F.2d 48, 50 (1st Cir.1983); *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 5–6, 389 N.E.2d 76 (1979).

Section 3 of the Massachusetts long arm statute provides in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to any cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistant course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth.

Mass.Gen.Laws ch. 223A, § 3.[9]

■ The "transacting any business" provision of the long arm statute has been construed broadly, *Hahn v. Vermont Law*

---

8. Even where there is a federal statute, such as Section 12, providing for worldwide service of process in a federal question case, the plaintiff has the option of relying on the forum state's long arm statute for asserting personal jurisdiction over the defendant. Although some courts have indicated that "the requirements of state long arm statutes are simply irrelevant to the in personam jurisdiction of a federal court," *Sportmart, Inc. v. Frisch*, 537 F.Supp. 1254, 1257 (N.D.Ill.1982), the Federal Rules of Civil Procedure clearly permit the plaintiff to look to the applicable state long arm statute. Fed.R.Civ.P. 4(c)(2)(C)(i); Advisory Committee Notes to the 1963 Amendments to Rule 4. Thus, Buckeye could rely on the Massachusetts long arm statute for asserting personal jurisdiction even on its federal antitrust claims. *See Black v. Acme Markets, Inc.*, 564 F.2d 681, 684 (5th Cir.1977).

9. The defendants note in their brief that Buckeye might also seek to invoke Mass.Gen.Laws ch. 223, § 38 in an attempt to establish personal jurisdiction over the defendants. The plaintiff has failed to mention this or any other statute as the basis for personal jurisdiction. Section 38 of Mass.Gen.Laws ch. 223 has not been supplanted by the long arm statute and therefore remains an independently viable basis for asserting jurisdiction over a foreign corporation. *Campbell v. Frontier Fishing & Hunting, Ltd.*, 10 Mass.App. 53, 405 N.E.2d 989 (1980). Section 38 permits service of process on a foreign corporation which "is engaged in or soliciting business in the commonwealth, permanently or temporarily." This statute may be invoked "only if a foreign Corporation's activities affected Massachusetts commerce substantially or so affected the transaction at issue as to make Massachusetts an appropriate forum." *Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 28 (1st Cir.1980). For the reasons set forth elsewhere in this opinion, the Court rules that Section 38

*School,* 698 F.2d 48, 50 (1st Cir.1983), and reaches any "purposeful acts by an individual, whether personal, private or commercial." *Ross v. Ross,* 371 Mass. 439, 441, 358 N.E.2d 437 (1976). The purely statutory requirement for jurisdiction under § 3(a) may be met where the only contact involved is an isolated transaction or one with little impact on the commerce of the commonwealth. *Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 933 (1st Cir. 1985). That is, a defendant with very slight contact with Massachusetts may be viewed literally as having "transacted business" in Massachusetts even though such contact may be *constitutionally* insufficient to support jurisdiction. *Id.; Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 8 n. 13, 389 N.E.2d 76 (1979).

■ Despite the broad construction of § 3(a), Buckeye has offered no evidence to support a finding that Fila Italy or Fila USA falls within that statutory provision. Although some Fila products are sold by department stores doing business in Massachusetts, there has not been a sufficient showing that either defendant has taken "purposeful" steps to transact business in the commonwealth.

Even if the defendants' contacts with Massachusetts amounted to transaction of business within the meaning of § 3(a), Buckeye's causes of action did not "arise from" such transaction of business. Buckeye's causes of action arise from (1) an alleged breach of contract which has no direct connection with Massachusetts, and (2) alleged acts by the defendants of inducing prospective buyers of goods from Buckeye to refrain from purchasing such goods. Since none of those causes of action arise

from any business transacted in Massachusetts by either Fila Italy or Fila USA, the Court cannot acquire jurisdiction under § 3(a). Subsection 3(b) is inapplicable for the same reason—even if the Court found that either defendant had "contracted to supply services or things in this commonwealth," [10] there is no connection between any such contractual relations and Buckeye's claims.

■ A closer question is presented by subsections 3(c) and 3(d). Several of Buckeye's claims relate to tortious conduct, including the alleged antitrust violations, which generally are considered to be grounded in tort for purposes of applying state long arm statutes. *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981); *see Engine Specialties, Inc. v. Bombardier Limited,* 454 F.2d 527 (1st Cir.1972). In its complaint, Buckeye makes certain conclusory allegations to support its claim that "the defendant committed tortious acts in this district." Buckeye essentially alleges that Fila USA conspired with prospective buyers of Fila merchandise (some of whom were located in Massachusetts) to refuse to deal with Buckeye. Buckeye also alleges that both Fila USA and Fila Italy contacted these prospective buyers with the intent of interfering with Buckeye's ability to sell Fila products. Fila USA has responded with an affidavit from its president, Pietro Fenu, stating that Mr. Fenu has had "no contact or communication with anyone in the State of Massachusetts relating to the plaintiff in this action." Although the affidavits from Fila Italy officials contain no similar statement, the thrust of those affi-

---

does not support the exercise of jurisdiction over the defendants.

**10.** Shipments F.O.B. do not, standing alone, give rise to jurisdiction under Mass.Gen.Laws ch. 223A, § 3(b) as they do not constitute contracts "to supply services or things in this commonwealth." *Droukas v. Divers Training Academy, Inc.,* 375 Mass. 149, 157–60, 376 N.E.2d 548 (1978). Here, there is no evidence that Buckeye

ever contracted with Fila USA for the delivery of goods or services whatsoever. As for Fila Italy, the contract appended to the complaint makes no reference to Massachusetts, and Buckeye has provided no factual support for its contention that certain of the Fila merchandise mentioned in the contract was slated for sale in Massachusetts.

davits clearly is that Fila Italy has had no significant contacts with anyone in Massachusetts.

Despite the requirement that it must go "beyond the pleadings" to establish jurisdiction in the face of opposing affidavits, *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1024 (1st Cir.1979), Buckeye has filed no counteraffidavits. However, even Buckeye's unsupported allegations fall short of demonstrating jurisdiction under either subsection 3(c) or 3(d) of the Massachusetts long arm statute. Subsection 3(c) is intended to apply only when the act causing the injury occurs within Massachusetts. There is no allegation that representatives of either Fila USA or Fila Italy have ever set foot in Massachusetts. Although it is not necessary to show physical presence of the defendant in the commonwealth, *id.* at 1024, Buckeye has simply alleged that the defendants contacted several non-parties, some of whom were located in Massachusetts, with the purpose of injuring Buckeye, an Ohio corporation. The Court rules that such an allegation is insufficient to show that the alleged tortious acts occurred in Massachusetts within the meaning of subsection 3(c). *See Kolikof v. Samuelson*, 488 F.Supp. 881, 883 (D.Mass.1980) (allegations that the defendant unlawfully tape recorded two telephone conversations while defendant was in Pennsylvania and plaintiff was in Massachusetts were insufficient to confer jurisdiction under 3(c)); *Chromium Indus. v. Mirror Polishing & Plating Co.*, 448 F.Supp. 544, 552 (N.D.Ill.1978) (rejecting theory that long arm jurisdiction exists over an absent corporate defendant merely because defendant is alleged to be part of a conspiracy having tortious consequences in the district).

The exercise of personal jurisdiction under subsection 3(d) does not depend upon the location of the allegedly tortious conduct. Instead, the plaintiff must show that there was tortious *injury* in Massachusetts. Buckeye claims that the defendants

interfered with its business relations with "prospective buyers" in Massachusetts and that such interference caused Buckeye to lose sales. Economic injury in the form of lost sales in the forum state may be sufficient to satisfy the requirement of "tortious injury in this commonwealth," even if the plaintiff's principal place of business is outside the forum. *See Engine Specialties, Inc. v. Bombardier Limited*, 454 F.2d 527, 529 (1st Cir.1972).

However, even if Buckeye can satisfy this threshold requirement of subsection 3(d), it must also demonstrate that each of the defendants "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." There is nothing is the record to indicate that either Fila Italy or Fila USA "regularly does or solicits business" in Massachusetts or otherwise engages in any "persistent course of conduct" here. The key question, then, is whether either defendant "derives substantial revenue from goods used or consumed" in Massachusetts.

The affidavit by Fila USA President Pietro Fenu indicates that Fila USA "ships merchandise to several department store chains located in the State of Massachusetts" and that "Fila USA's total sales in the State of Massachusetts amounted to less than two percent (2%) of its total gross sales nationwide in the United States in 1984." These statements suggest that Fila USA does derive some revenue from goods used or consumed in Massachusetts; however, they are insufficient standing alone for this Court to conclude that such revenue is "substantial" for purposes of subsection 3(d). Although the "substantial revenue" requirement is construed liberally, *Mark v. Obear & Sons, Inc.*, 313 F.Supp. 373, 375–76 (D.Mass.1970) ($5,000 constituted "substantial revenue"), there is no evidence whatsoever indicating the volume of sales in Massachusetts of Fila mer-

chandise. On this record, it would be pure speculation to conclude that either defendant derived "substantial revenue" from sales in Massachusetts.

The plaintiff has thus failed to establish that this Court can properly exercise personal jurisdiction over either defendant under the Massachusetts long arm statute. Having reached this conclusion, ordinarily the Court would have no reason to determine whether the exercise of jurisdiction over the defendants would be consistent with the due process requirements mandated by the United States Constitution. However, because the facts relating to the sale of Fila products in Massachusetts present a close question under the long arm statute, a brief review of the constitutional due process requirements is in order.

### III. *Due Process Requirements*

■■■ Even if the exercise of personal jurisdiction over a nonresident defendant is authorized by statute, the assertion of jurisdiction must also satisfy the requirements of due process. Under the principles of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), this Court must determine whether each defendant has purposely established "minimum contacts" in the forum state such that the exercise of personal jurisdiction would comport with "fair play and substantial justice." *Id.* at 319–20, 66 S.Ct. at 159–60. A defendant's conduct and connection with the forum must be such that he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In each case, there must be some act by which the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■■■ Applying these principles to the facts of this case, the Court rules that there has been an inadequate showing of "minimum contacts" in Massachusetts on the part of either defendant. With respect to Fila Italy, there is no evidence of any contact with Massachusetts other than Buckeye's unsupported "belief" that representatives of Fila Italy contacted certain prospective buyers of Fila products in Massachusetts with the purpose of interfering with Buckeye's business relations. A similar allegation lodged against Fila USA has been directly refuted by affidavit. As for Fila USA's shipments of merchandise to some department store chains who conduct business in Massachusetts, such shipments ordinarily would suggest that Fila USA "purposely directed" certain business activities toward Massachusetts residents. However, the Court does not have sufficient record evidence to adequately assess the nature or scope of such activities.

At the oral hearing, Buckeye's counsel relied heavily on the Supreme Court's recent decision in *Burger King Corp. v. Rudzewicz*, —— U.S. ——, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Burger King*, the Court held that a federal court in Florida could constitutionally exercise personal jurisdiction over a Michigan restaurant franchisee who, despite having no physical ties to Florida, established a "substantial and continuing relationship" with the franchisor's Florida headquarters and "received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida." *Id.* at ——, 105 S.Ct. at 2190. Although Buckeye's counsel suggested that *Burger King* extended traditional due process analysis into a new frontier, the Court is not persuaded that the Supreme Court's pronouncement significantly affects the jurisdictional inquiry in this case.

The *Burger King* decision reaffirms the principles, discussed above, that have been laid down by *International Shoe* and its progeny. Although *Burger King* does emphasize that jurisdiction "may not be avoided merely because the defendant did not

*physically* enter the forum State," —— U.S. at ——, 105 S.Ct. at 2184 (emphasis in original), as appears to be the situation in the case at bar, the Supreme Court also made clear that a defendant's purposeful actions must create a "substantial connection" with the forum. *Id.; see McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). On the existing record, the Court is unable to conclude that either Fila Italy or Fila USA has a substantial connection with Massachusetts.

For the reasons set forth above, the defendants' motion to dismiss for lack of personal jurisdiction is ALLOWED.