Houston, J.
This action arises out of a sponsorship agreement entered into by plaintiff Lycos, Inc. (“Lycos”) and defendant TJ Motorsports, Inc., d/b/a Tyler Jet Motor Sports (“TJ Motorsports”) providing that Lycos would sponsor TJ Motorsports’ racing ve *533 hide on the NASCAR drcuit. On June 29, 2000, Lycos elected to terminate the sponsorship agreement. TJ Motorsports disputes Lycos’ termination and argues that its decision to terminate the agreement without providing monetary compensation, as required under the agreement, amounts to a breach of contract. As a result of this dispute, it became clear to Lycos that TJ Motorsports intended to sue over this dispute. Consequently, on July 13, 2000, Lycos filed this action for a declaratory judgment seeking a binding decision that it has fulfilled all of its obligations under the terms of the sponsorship agreement, that it is not liable for damages to TJ Motorsports.
Defendants, TJ Motorsports Inc., ISM Corporation and Burl Outlaw, now move to dismiss this action pursuant to Mass.R.Civ.P. 12(b)(2) and 12(b)(6). For the reasons set forth below, defendants’ motion is DENIED.

BACKGROUND

Lycos’ pleadings allege facts summarized below, which are taken as true solely for evaluating the Rule 12(b)(6) motions. Also summarized here are jurisdictional facts set out in the affidavit of Joshua Todd, a Promotions Specials for Lycos (“Todd”).[2]
Plaintiff, Lycos, is a Delaware Corporation with its principal place of business in Waltham, Massachusetts. Lycos is a leading Web media company and owner of Lycos Network, a unified set of Web sites offering a variety of Internet services including Web search and navigation resources. Lycos is a global Internet leader with a major presence throughout the United States, Europe, Asia, Canada and Latin America.
Defendant, TJ Motorsports (d/b/a/ Tyler Jet Motorsports) (“TJ Motorsports”) is a Delaware corporation with its principal place of business in Harrisburg, North Carolina. TJ Motorsports owns and operates a NASCAR Winston Cup race car.
Defendant, Burl Outlaw (“Outlaw”) is TJ Motorsports’ agent. His principal place of business is Indianapolis, Indiana. Outlaw is a principal of defendant ISM Motorsports Corp. (“ISM”), a sports marketing agency in the business of race team ownership services and the solicitation of sponsorship endorsements of auto racing teams. Its principal place of business is Indianapolis, Indiana.
In early 2000, Outlaw contacted Lycos in Massachusetts on behalf of TJ Motorsports and spoke to Todd about becoming a primary sponsor of TJ Motorsports’ NASCAR racing vehicle.[3] Following up on his conversation with Todd, Outlaw sent Todd a letter outlining the benefits of sponsoring an Indy Racing League team and an initial proposal for Lycos’ sponsorship. Over the next two months, Outlaw was in daily communications via phone, facsimile and email with Todd for the purposes of negotiating a “barter” sponsorship arrangement. Under the sponsorship agreement, Lycos would pay for national exposure on the car not with cash but with banner advertisements on the Lycos Network.
On March 17, 2000, Lycos and TJ Motorsports entered into the “Winston Cup Sponsorship Agreement” (“Sponsorship Agreement”), whereby Lycos would be the primary sponsor of the car, enabling it to display the Lycos logo on, among other things, the car’s hood, upper rear quarter panel and TV panel. In consideration of this exposure, Lycos agreed to provide TJ Motorsports with $4,000,000 worth of advertising banners on the Lycos Network (“Lycos Advertising”). TJ Motorsports, in turn, was permitted to resell Lycos Advertising for cash or other consideration.[4]
Over the next several months, Todd and other Lycos employees in Massachusetts were in frequent contact with Outlaw and other TJ Motorsports representatives related to the performance of the Sponsorship Agreement. Specifically, Lycos employees created, implemented and hosted various web pages promoting TJ Motorsports’s NASCAR entry, created and implemented online chat sessions with Lycos consumers and TJ Motorsports’ driver, Jonny Benson, and designed and approved artwork displayed by TJ Motorsports on the race car and other team equipment and uniforms.
Despite TJ Motorsports’ continued efforts, however, it was unable to sell a substantial portion of Lycos Advertising provided under the Sponsorship Agreement. By June 15, 2000, TJ Motorsports resold only approximately $100,000 in Lycos Advertising.
On June 15, 2000, TJ Motorsports served written notice upon Lycos that it had not generated $2.75 million, and pursuant to the Sponsorship Agreement it would terminate the Sponsorship Agreement within 15 days. On June 29, 2000, TJ Motorsports provided Lycos notice of its election to terminate the Sponsorship Agreement effective June 30, 2000. On this same day, Lycos preemptively terminated the Sponsorship Agreement with TJ Motorsports. Immediately after receiving notice of Lycos’ termination, TJ Motorsports informed Lycos that it would commence litigation for breach of contract unless it paid TJ Motorsports a substantial sum of cash.
On June 30, 2000, TJ Motorsports held a national press conference announcing that the Lycos sponsorship of the race car had been terminated, in part, because Lycos failed to satisfactorily perform the terms of the Sponsorship Agreement. As a result of the announcement, in the week following the press conference, Lycos received over 500 e-mail messages from TJ Motorsports’ fans indicating anger of Lycos’ cancellation of the Sponsorship Agreement vowing to discontinue using Lycos’ services and to encourage others to do the same.
*534 In the wake of this negative publicity and after the apparent threat of litigation, on July 13, 2000, Lycos filed for this declaratory judgment. On July 18, 2000, Lycos informed TJ Motorsports of this suit by facsimile. Around this same date, TJ Motorsports assigned its purported causes of action against Lycos to Tyler Jet. On July 20, 2000, Tyler Jet subsequently filed suit against Lycos in the United States District Court for the Eastern District of Texas-Lufkin Division alleging breach of contract and fraudulent inducement arising out of the Sponsorship Agreement.

DISCUSSION

I. Motions to Dismiss Under Mass.R.Civ.P. 12(b)(2)
Defendants contend that they are not subject to personal jurisdiction in the Commonwealth. Whether personal jurisdiction over a nonresident exists requires a two-fold inquiry: (1) whether jurisdiction is authorized under state law, and (2) if authorized, whether exercise of jurisdiction under state law is consistent with basic due process requirements of the United States Constitution. Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979); Haddad v. Taylor, 32 Mass.App.Ct. 332, 334-36 (1992). Lycos bears the burden of establishing jurisdiction. Kleinerman v. Morse, 26 Mass.App.Ct. 819, 820 (1989).
Lycos argues there is jurisdiction under G.L.c. 223A, §3(a), commonly known as the Massachusetts Longarm Statute. Chapter 223A, §3 (a) states in pertinent part:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person (a) transacting any business in this commonwealth . . .
For jurisdiction under Section 3(a), “the defendant must have transacted business in Massachusetts, and the plaintiffs claim must have arisen from the transaction of business by the defendant.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Massachusetts courts construe the term “transacting business” broadly. Id. The statutory requirement for jurisdiction under §3(a) may be met where the only contact involved is an isolated transaction or one with little impact on the commerce of the Commonwealth. Buckeye Assoc. v. Fila Sports, Inc., 616 F. Supp. 1484, 1491-92 (D.Mass. 1985).
The record before this court shows that defendants’ contacts with Massachusetts during the relevant period were substantial and continuous. TJ Motorsports and ISM solicited agreements from Lycos that involved almost daily negotiations over an extended period. Outlaw, personally and on behalf of TJ Motorsports had frequent telephone and mail conferences with Lycos in order to negotiate and finalize the Sponsorship Agreement. See Haddad v. Taylor, 32 Mass.App.Ct. 332, 335 (1992) (finding that defendant transacted business in Commonwealth by negotiating over the phone and through mail with plaintiff and his agent in Massachusetts). In addition, after Lycos and TJ Motorsports executed the Sponsorship Agreement in March 2000, they maintained a business relationship by arranging for the placement of TJ Motorsports advertising banners on the Lycos Network using Lycos’ technical facilities in Massachusetts, creating and implementing a web site and hosting an on-line chat sessions for TJ Motorsports and driver, Jonny Benson. See Sonesta Intl. Hotels Corp. v. Central Fla. Investments, Inc., 47 Mass.App.Ct. 154, 160-61 (1999), rev. denied 430 Mass. 1106 (letter by facsimile sent by defendant in Florida to plaintiff in Massachusetts initiated an ongoing relationship involving multiple contacts between the parties).
Moreover, defendants’ argument against personal jurisdiction because neither a representative from ISM nor TJ Motorsports ever stepped foot in Massachusetts is without merit. It is well established that an on-going business relationship conducted solely by mail and wire communications in the forum state is sufficient for jurisdiction. See Good Hope Indus. v. Scott Co., 378 Mass. 1, 5-6 (1979) (telephone calls, mailings and accepting payment by checks drawn from Massachusetts bank account held to constitute transaction of business); Haddad, 32 Mass.App.Ct. at 335 (use of telephone and mails constitute transaction of business). Thus, actual physical presence of defendants in this jurisdiction is not required to acquire personal jurisdiction under “transacting business” clause. Accordingly, defendants’ contacts with the Commonwealth are sufficient to establish jurisdiction under G.L.c. 223A, §3(a).
For constitutional purposes, personal jurisdiction requires certain minimum contacts with Massachusetts such that the maintenance of the suit does not offend “traditional notions of fair play and substantial justice.” Ross v. Ross, 371 Mass. 439, 441 (1976). The nature, extent and frequency of defendants’ contacts with the Commonwealth also satisfy constitutional due process. See Tatro, 416 Mass. at 767. Defendants established an on-going business relationship with a Massachusetts-based company and had specific contacts with Lycos that makes it not unfair for them to be subject to the jurisdiction of Massachusetts. Massachusetts certainly had a legitimate and substantial interest in providing a forum for this suit. -Not only is Lycos’ principal place of business in Massachusetts, but defendants reached into Massachusetts to solicit business and negotiated and executed much of the Sponsorship Agreement in Massachusetts. Thus, this court’s exercise of personal jurisdiction over defendant’s is proper.
II. Rule 12(b)(6) Motions
Under the standard for reviewing Rule 12(b)(6) motions, this court accepts as true all facts alleged in the complaint and draws all reasonable inferences favorable to Lycos. See Spinner v. Nutt, 417 Mass. 549, *535 550 (1994). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts to entitle him to relief. See Bell v. Mazza, 394 Mass. 176, 184 (1985).
This action seeks a declaration that “Lycos and TJ Motorsports entered into a valid and enforceable contract on March 17, 2000, that the rights and obligations of Lycos, Inc. and TJ Motorsports, Inc., are set forth in that written contract, and that Lycos, Inc. has fulfilled all obligations concerning or relating to the events described in the contract.” See Amended Complaint ¶ 1. Lycos asserts that TJ Motorsports’ actions at its June 30, 2000 press conference, as well as its disparaging remarks related to Lycos’ performance under the Sponsorship Agreement caused damage to Lycos’ corporate reputation. Thus, Lycos sought a declaratory judgment in order to clarify its rights and liabilities under the Sponsorship Agreement.
The purpose of an action for declaratory judgment is “to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations.” G.L.c. 231A, §9. General Laws chapter 231 A, the Massachusetts declaratory judgment statute, should be liberally construed and administered id.; Pazott v. Director of the Div. of Marine Fisheries, 417 Mass. 565, 569 (1994). In its discretion, a court may decline to entertain a declaratory judgment action on the merits where a judgment would not end the controversy between the parties. G.L.c. 231A, §3; see also Jacoby v. Babcock Artificial Kidney Center, Inc., 364 Mass. 561, 563-64 (1974) (inappropriate to issue declaratory judgment when a prior civil proceeding in which same issue is or can be raised is already pending between the parties).
In the present case, there is an actual controversy between Lycos and TJ Motorsports as to whether Lycos breached the Sponsorship Agreement and, as a result, owes TJ Motorsports millions of dollars. TJ Motorsports alleges that Lycos was obligated to tender, in cash, within 15 days of the receipt of appropriate notice, the difference between $2,750,000 and the amount of cash actually generated. Conversely, Lycos contends that under the Sponsorship Agreement, Lycos had the option, but not the obligation, to prevent termination of the Agreement by tendering cash to make up for any shortfall. These differing interpretations of the Sponsorship Agreement show that there is an actual controversy among the parties.
Further, it is clear that this action would indeed end the controversy between the parties. All parties to the Sponsorship Agreement are joined, and all forms of relief not presently requested are available as counterclaims. Moreover, contrary to defendants’ assertions, the controversy at issue clearly has a far greater nexus with Massachusetts than with Texas. As previously noted, Lycos’ principal place of business is Massachusetts, the Sponsorship Agreement was negotiated and executed in Massachusetts, and the Sponsorship Agreement expressly provides that Massachusetts law shall govern the terms and conditions. The only Texas nexus is that TJ Motorsports' assignee, Tyler Jet, now resides in Texas.
Accordingly, because this court is presented with an actual controversy involving issues of Massachusetts law pursuant to the interests of a Massachusetts resident, this court will exercise jurisdiction will exercise its jurisdiction consistent with the intent and purpose of G.L.c. 231A, §1.

ORDER

For the foregoing reasons, defendants TJ Motorsports, ISM and Burl Outlaw motion to dismiss is DENIED.

 This court considers the affidavits only in evaluating the personal jurisdiction issues.

 Previously, during the 1999 Winston Cup racing season, Lycos had been an associate sponsor of TJ Motorsports' car.

 The Sponsorship Agreement further provided that if TJ Motorsports was unable to raise as much cash as it needed by selling Lycos Advertising, it would be permitted to terminate the Sponsorship Agreement on fifteen days written notice if it had not generated at least $2.75 million from the sale of Lycos Advertising on or before June 15, 2000.
Upon receipt of such notice, Lycos contends it had the option, to prevent such termination either by assisting TJ Motorsports to sell $2.75 million in Lycos Advertising by June 30, 2000, or by making up any shortfall with a cash payment.
In addition to Lycos Advertising, the Sponsorship Agreement also provided for TJ Motorsports to receive $1,500,000 in cash from Outlaw on or before June 15, 2000. Outlaw, in turn, received the right to sell standard advertising banners on the Lycos Network for his own benefit.